Commonwealth *v.* Bykowski et al., Appellants.

Argued April 11, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Martin M. Sheinman,* with him *Hubert I. Teitelbaum,* and *Morris, Safier & Teitelbaum,* for appellants.

*Edwin J. Martin,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, December 21, 1966:

The judgments of sentence are affirmed and the appellants are directed to appear in the court below, at such time as they may be there called, to be by that court committed until they have complied with the sentences or any parts thereof which had not been performed at the time the appeal was made a supersedeas.

DISSENTING OPINION BY SPAULDING, J.:

This is an appeal by Raymond Bykowski and Walter Rachuba from convictions of operating a lottery and of conspiracy to operate a lottery.

On March 15, 1962, search warrants were issued by a United States Commissioner for 529 Evergreen Avenue, Millvale, Allegheny County, Pennsylvania and for another property with which we are not now concerned. The following day appellants were arrested in the Evergreen property and certain evidence was seized.[1] Subsequently, the Federal charges were withdrawn and the seized evidence was turned over to Allegheny County authorities who indicted appellants. A preliminary hearing on a motion to suppress resulted in dismissal and a jury trial followed.

Appellants' primary contention is that improper force was used in the execution of the search warrants, thus rendering them illegal and the evidence seized under them inadmissible.[2]

The validity of a search made pursuant to a legally issued warrant turns on its reasonableness. *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623 (1962).[3] Regarding the execution of search warrants, Congress has provided a statement of the Fourth Amendment command in 18 U.S.C. §3109: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose,

---

[1] The evidence included: large quantities of lottery and numbers slips, seven adding machines, and adding machine tapes.

[2] Evidence obtained by a search or seizure in violation of Constitutional standards is inadmissible in state courts. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961).

[3] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizure shall not be violated, and no warrants shall issue but upon probable cause."

he is refused admittance . . . ."[4]  When interpreting the above, the Court in *United States v. Barrow*, 212 F. Supp. 837, 844 (E.D. Pa. 1962), was careful to stress that the requirement of announcement of purpose must be met independently of announcement of authority. In discussing the leading case of *Miller v. United States*, 357 U.S. 301, 78 S. Ct. 1190 (1958), the Court said: "The Supreme Court reversed the conviction holding that because there had been no announcement by the officers of their *purpose*, even though *identity* had been announced, the breaking of the door was illegal, the arrest was unlawful, the consequent seizure of the marked bills was equally unlawful and that the bills were therefore improperly admitted into evidence. . . . Whatever the circumstances under which breaking a door to arrest for felony might be lawful, however, the breaking was unlawful where the officer failed first to state his authority *and purpose* for demanding admission."

Whether there was compliance with the §3109 announcement rule in the case at bar turns on a careful consideration of the following facts.  The Evergreen premises had been under intermittent surveillance by several criminal investigators of the Alcohol and Tobacco Tax Division of the United States Treasury Department.  Having obtained search warrants, investigators Madden, Cassidy, and Daverio; special agents Dye, Caruso, and Bonomi; and Deputy United States Marshal Milanovitch planned to arrive at the front and back doors simultaneously.  Milanovitch, Caruso and Cassidy went to the front door which entered into another apartment in the same dwelling.  Their entry was not made by force.  The others ascended steps to a

---

[4] Here, Federal agents were executing Federal warrants for a violation of Federal law. No State officers or warrants were involved. Under these circumstances, Federal standards apply. See *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222 (1948) ; *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367 (1948).

rear porch where there were two doors about five to eight feet apart. Madden proceeded to one leading to the kitchen and Dye to the other opening into a bedroom.

Madden testified he was the first officer to enter. According to him, he announced he was a federal officer, received no response, heard a noise inside and shoved in the door.[5] On cross-examination, Madden was specifically asked whether he had announced that his purpose was to serve a search warrant.

"Q. You knocked on the door. You said you were Federal agents with a warrant, is that what you said?

"A. I had to announce myself as a Federal agent.

"Q. You didn't say you had a warrant though?

"A. No, sir."

Dye testified he knocked on the other door, announced he was a "Federal Officer with a search warrant" and, hearing nothing, broke in the door and entered. He did not repeat his statement. However, Bonomi, who followed Madden into the kitchen, testified that all he heard was an announcement of "Federal agents" prior to entry and that Dye did not state he had a search warrant until he was inside. No request was made by any officer to open the door and there was no refusal of admission. If Dye did announce he had a search warrant before entering, it is doubtful that it was loud enough to be meaningful if it was not heard by a fellow officer a few feet away.

The Supreme Court has recognized that under exigent circumstances a search warrant could be reasonably and validly executed without an announcement of authority and purpose: "(1) where the persons within already know of the officers' authority and purpose, or

---

[5] Madden said: "As I approached the door I knocked and announced in a loud voice that I was a Federal agent. I did not hear any noise right away, but then I heard a scuffling, and at that time I hit the door and entered the kitchen."

(2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." *Ker v. California,* supra, at 47.[6]

In the instant case, there is no indication that those inside knew of or could anticipate the officers' arrival. The evidence shows no probability of peril to those inside or to the officers themselves and the planned presence of officers at every door made an attempted escape highly unlikely.[7] Although Madden testified he heard a "scuffling" inside, there is no testimony that he or any of the officers believed evidence was being or might be destroyed if entry was delayed.[8]

In addition to adequate announcement, there is a second question which is crucial to a determination of legal execution of search warrants—the proper interval between announcement and entry. The standard of reasonableness built into §3109 includes a careful examination of all the circumstances.[9] The phrase "re-

---

[6] For a comprehensive analysis, see: Blakey, The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California, 112 U. Pa. L. Rev. 499 (1964).

[7] Compare *Commonwealth v. Ametrane,* 422 Pa. 83 (1966), where the failure of the officers to announce their authority and purpose prior to entry did not render the resulting arrest and search illegal. Justice COHEN states: "The testimony reveals that they were observed by defendant as they approached his door; that there was an interval of silence which lasted one minute following their first knock at the door; and that even before they were able to apply the crowbar the defendant opened the door. Under these circumstances, it is obvious that defendant knew their identity and purpose without a formal announcement."

[8] Upon entry, no evidence had been or was about to be destroyed.

[9] "How much time is needed for an officer to wait after announcing his presence and purpose, is a question that must be de-

fused admittance" is not limited to affirmative refusal. It would be the unusual case where an occupant affirmatively made known his refusal after receiving an announcement. *Masiello v. U.S.*, 317 F. 2d 121 (C.A. D.C. 1963).

Here, the interval between announcement and entry was approximately 10 to 20 seconds. Madden described the time as "briefly", "not very long", and "ten seconds". Dye's estimate was "ten to twenty seconds". In light of the unlikely possibility of peril or escape, the appellants' unawareness of the officers' presence or purpose, the absence of an affirmative refusal, and the lack of testimony that the evidence could be quickly destroyed or was being destroyed, an interval of only 10 to 20 seconds was unreasonable.

Under the circumstances, I believe the motion to suppress should have been granted.

I respectfully dissent.

HOFFMAN, J., joins in this opinion.

---

termined by the facts and circumstances of each case." *U. S. v. Gorman*, 208 F. Supp. 747, 750 (E.D. Mich., 1962).