Commonwealth *v.* Bykowski, Appellant.

Argued May 2, 1967. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

Reargument granted February 20, 1968.

Reargued March 12, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Martin M. Sheinman*, with him *Hubert I. Teitelbaum*, and *Morris, Safier & Teitelbaum*, for appellants.

*Edwin J. Martin*, Assistant District Attorney, with him *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 16, 1968:

Appellants, Raymond Bykowski and Walter Rachuba, were convicted by a jury in Allegheny County of operating a lottery and conspiracy to operate a lottery. Post-trial motions in arrest of judgment and for a new trial were dismissed and sentence imposed. An appeal followed to the Superior Court which, with two judges dissenting, affirmed the convictions. See *Commonwealth v. Bykowski,* 209 Pa. Superior Ct. 142, 225 A. 2d 252 (1966). Allocatur was granted by this Court; after argument, the courts below were affirmed, this Court being equally divided. Appellants then filed a petition for reargument, urging us to re-examine our decision in light of two subsequently rendered decisions of the Supreme Court of the United States— *Marchetti v. United States,* 390 U.S. 39, 88 S. Ct. 697 (1968) and *Grosso v. United States,* 390 U.S. 62, 88 S. Ct. 709 (1968). This request was granted.

We conclude that these two decisions of the Supreme Court have changed the parameters of our previous decision and that, given this new learning, appellants must prevail. The evidence employed to procure the convictions under review was obtained by Allehgeny County authorities from federal authorities. The federal authorities in turn seized the evidence pursuant to a search warrant issued, according to the face of the warrant, to uncover goods used in "violation of Sections 7203, 4411, and 4412 of the Internal Revenue Code of 1954." Section 4411, see 26 U.S.C.A. §4411, imposes a special occupational tax of $50 on persons engaged in certain gambling activities; section 4412, see 26 U.S.C.A. §4412, requires that each person liable for such tax shall register with the Internal Revenue Service; and section 7203, see 26 U.S.C.A. §7203, makes, inter alia, failure to comply with either §4411 or §4412 a criminal offense carrying a fine of not more than

$10,000 and/or a maximum sentence of imprisonment for one year.

*Marchetti* involved a federal prosecution for violation of §§4411 and 4412. Defendant contended that a conviction for failure to comply with either of these two sections would work a violation of his privilege against self-incrimination and the Supreme Court agreed, holding that the assertion of this privilege constituted a complete defense. It is the Supreme Court's rationale for this decision that is most important. Emphasizing the comprehensive state and federal system of gambling regulation and the fact that, once an individual has registered under the federal statute, this information is made available to state prosecutors,[1] the Court obviously bottomed its decision upon a belief that a potential defendant is placed between the Scylla and the Charybdis.[2] Simply, if the individual registers, then this information is available to state prosecutors; if he does not register and pay the tax, then he can be prosecuted for failure to do so in federal court.[3]

---

[1] Information obtained by federal authorities under the wagering tax laws is by statute, see 26 U.S.C.A. §6107, made available to state prosecutors.

[2] *Marchetti v. United States*, supra at 52-3, 88 S. Ct. at 705: "[T]he acquisition of a federal gambling tax stamp, requiring as it does the declaration of a present intent to commence gambling activities, obliges even a prospective gambler to accuse himself of conspiracy to violate either state gambling prohibitions, or federal laws forbidding the use of interstate facilities for gambling purposes."

[3] The Supreme Court explicitly rejected the rationale of its prior decisions such as *Lewis v. United States*, 348 U.S. 419, 75 S. Ct. 415 (1955) that a potential gambler could avoid all problems of self-incrimination by a decision not to engage in gambling activities and that a decision to gamble was therefore a waiver of the privilege. See *Marchetti v. United States*, supra at 51-2, 88 S. Ct. at 704: "The question is not whether petitioner holds a 'right' to violate state law, but whether, having done so, he may be compelled to give evidence against himself. . . . We cannot

The impact of this legislative package, according to the Court, was a Fifth Amendment violation.

What, then, is the impact of *Marchetti* when evidence seized by federal officers searching for alleged violations of §§4411 and 4412 is employed to secure state convictions? *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489 (1964) teaches us that the Fifth Amendment privilege against self-incrimination is contained within the Fourteenth Amendment concept of due process and is thus applicable to the states. We therefore believe that if a federal prosecution based upon violations of §§4411 and 4412 (and evidence seized to prove these violations) would infringe the accused's privilege against self-incrimination and if this privilege applies to the states, then a state prosecution based upon the same evidence seized by federal officers would equally violate that privilege. Were the rule otherwise, the *Marchetti* decision and its conclusion that prosecutions for violations of the federal statutes here involved run afoul of the Fifth Amendment could be easily eroded if state prosecutions based upon evidence seized by federal officers searching for violations of the now unconstitutional statutes were permitted. Whether this evidence is used in state or federal court, the evil is identical—an accused's failure to register and pay the tax, as well as evidence seized to prove this failure, becomes the basis of a criminal prosecution violative of the Fifth Amendment. Certainly, after *Marchetti,* the evidence used to convict appellants could not be constitutionally admitted in a federal court; were we to admit it, we believe that an identical constitutional violation would be committed. We wish it clearly un-

---

agree that the constitutional privilege is meaningfully waived merely because those 'inherently suspect of criminal activities' have been commanded either to cease wagering or to provide information incriminating to themselves, and have ultimately elected to do neither."

derstood, however, that our decision today in no way impinges upon the constitutional validity of state statutes prohibiting gambling. All we hold is that evidence whose use in federal court would violate the Fifth Amendment equally violates the Fifth Amendment when admitted in a state prosecution.

Nor need we decide the possible retroactive application of *Marchetti* to state prosecutions in which evidence seized by federal officials was admitted and which became final prior to *Marchetti*. Appellants' convictions have not as yet become final by virtue of the grant by this Court of their reargument petition. In *Grosso*, the defendant did not assert his privilege against self-incrimination as a defense to all counts in his indictment; yet the Supreme Court held that he could avail himself of the rule announced in *Marchetti* (390 U.S. at 70-1, 88 S. Ct. at 715) : "Petitioner has not, however, asserted a claim of privilege either as to the counts which charged willful failure to pay the occupational tax, or as to the allegation that he conspired to evade payment of the occupational tax. Given the decisions of this Court in Kahriger and Lewis . . . [decisions, overruled by *Marchetti*, which sustained the constitutionality of the challenged statutes], which were on the books at the time of petitioner's trial, . . . we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege."

The Supreme Court has thus decided that the *Marchetti* decision is available to those whose convictions were not final when *Marchetti* was decided. That is all that we hold today.

The judgment of the Court of Quarter Sessions of Allegheny County is reversed and a new trial is granted.

Mr. Justice COHEN dissents.