STATE OF NEW JERSEY, PLAINTIFF, v.
RUGGERIO BOIARDO, TOBY BOYD, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided September 20, 1968.

*Mr. Michael A. Querques* for defendants Ruggerio Boiardo and Toby Boyd.

*Mr. Charles C. Carella* for defendants Angelo Sica, Nunzio Sica and Thomas DeBenedetto a/k/a Louis DeBenedetto.

Mr. *Samuel Rosenthal* for defendant Benjamin Thomas.

Mr. *Donald S. Coburn,* Assistant Prosecutor, for the State of New Jersey (Mr. *Joseph P. Lordi,* Prosecutor of Essex County, attorney).

Mr. *Harold Krieger* for defendant Andrew Gerardo.

Mr. *Michael Salandra* for defendants Cesar Cerato and Michael Del Guercio.

Mr. *Samuel Rosenthal* for defendants Joseph Cipriano and Michael Russomano (Mr. *Myron P. Maurer,* attorney).

Mr. *Daniel E. Isles* for defendant Julia Orsi.

Mr. *Mario V. Farco* for defendants Geraldino Donato Custode and Nino Maccioli.

Mr. *Saul C. Schutzman* for defendants Carmine Liquori, Michael Maironino and Joseph Sarrecchia.

Mr. *Samuel D. Bozza* for defendants John Malanga and Thomas Sperduto.

FUSCO, J. S. C. I am going to consider these matters in the order in which they have been presented. I am cognizant of the fact there are some 19 defendants involved in indictment 2224–67, all of whom have joined in a motion to dismiss the indictment charging conspiracy. Julia Orsi also makes a motion to dismiss the indictments against her charging her with a violation of the lottery laws under indictments 2233 and 2234. Benjamin Thomas moves for a dismissal of indictments 2239, charging maintaining, and 2240, charging violation of the lottery laws. Nunzio Sica seeks a dismissal of indictments 2235, charging maintenance, and 2236.

charging violation of the lottery laws. Michael Russomano moves for a dismissal of indictment 2233, charging violation of the lottery laws.

Thus, besides the principal indictment, the several indictments referring to the individual defendants which I have made reference to are the subject matter of this motion or these motions to dismiss.

It appears that all the defendants have been indicted by the Essex County grand jury for conspiracy to violate the lottery laws of the State of New Jersey, and certain of them for having in their possession lottery slips or maintaining premises to which persons might resort for gambling.

It appears and is almost conceded by the State that the evidence upon which the indictments are founded was originally seized by federal authorities pursuant to search warrants which asserted violations of the Federal Wagering Tax Laws, specifically, 26 *U. S. C.* §§ 4401, 4411, 4412, 4901, 7203 and 7262, and 18 *U. S. C.* 371.

The State indicates that the evidence so gathered by the federal authorities was then turned over to the Essex County Prosecutor. The federal indictments against these several defendants, which were based upon these statutes and upon the evidence so seized, were dismissed on motion of the United States Attorney for the District of New Jersey on June 7, 1968.

Defendants contend, generally, that the Supreme Court of the United States has shown a trend over the past several decades for making more and more of the constitutional guarantees embodied in the Bill of Rights obligatory upon the states under the Fourteenth Amendment. Moreover, that court has required the states to employ federal standards when interpreting these rights. This trend has continued from the landmark case of *Wolf v. People of State of Colorado,* 338 *U. S.* 25, 69 *S. Ct.* 1359, 93 *L. Ed.* 1782 (1949), through *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed. 2d* 1081 (1961), and *Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed. 2d* 799 (1963).

The court focused on the self-incrimination clause of the Fifth Amendment in *Malloy v. Hogan,* 378 *U. S.* 1. 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964), holding that the states may not abridge that basic right under the Fourteenth Amendment. Defendants argue that it is against this background that the issues in this case must be considered.

In *Marchetti v. United States,* 390 *U. S.* 39, 88 *S. Ct.* 697, 19 *L. Ed. 2d* 889 (1968), the Supreme Court, it is contended by the defendants, held that the privilege against self-incrimination provides a complete defense to a prosecution under 26 *U. S. C.* §§ 4411 and 4412, the federal statutes which impose an occupational tax on gamblers and require the registration of all those who must pay this tax. Defendants call to the attention of the court various excerpts from this case:

"Wagering and its ancillary activities are very widely prohibited under both federal and state law. Federal statutes impose criminal penalties upon the interstate transmission of wagering information."

And

"State and local enactments are more comprehensive. The laws of every state, except Nevada, include broad prohibitions against gambling, wagering, and associated activities."

The *Marchetti* opinion goes on:

"Information obtained as a consequence of the federal wagering tax laws is readily available to assist the efforts of state and federal authorities to enforce these penalties. Section 6107 of Title 26 requires the principal internal revenue offices to provide the prosecuting officers a listing of those who have paid the occupational tax. * * * Evidence of the possession of a federal wagering tax stamp, or of payment of the wagering taxes, has often been admitted at trial in state and federal prosecutions for gambling offenses."

And

"Petitioner was confronted by a comprehensive system of federal and state prohibitions against wagering activities; * * * the

question is not whether petitioner holds a 'right' to violate state law, but whether, having done so, he may be compelled to give evidence against himself. * * * Further, the acquisition of a federal gambling tax stamp, requiring as it does the declaration of a present intent to commence gambling activities, obliges even a prospective gambler to accuse himself of conspiracy to violate either state gambling prohibitions, or federal laws forbidding the use of interstate facilities for gambling purposes. * * * Indeed, (prospective registrants) can reasonably fear that registration, and acquisition of a wagering tax stamp, may serve as decisive evidence that they have in fact subsequently violated state gambling prohibitions."

And, finally:

"Moreover, the imposition of such restrictions would necessarily oblige state prosecuting authorities to establish in each case that their evidence was untainted by any connection with information obtained as a consequence of the wagering taxes * * *."

*Grosso v. United States*, 390 *U. S.* 62, 88 *S. Ct.* 709, 19 *L. Ed.* 2d 906 (1968), is further cited, indicating that the court dealt similarly with the excise tax imposed on wagering.

Defendants contend that the present state prosecutions cannot be maintained in the wake of these two cases because first, the literal language of the cases appears to preclude any criminal prosecution based upon the failure to comply with these federal statutes, and this prosecution is based upon evidence obtained as the result of the defendants' failure to comply; and secondly, since the self-incrimination clause of the Fifth Amendment is binding upon the states and the *Marchetti* and *Grosso* decisions were based on the Fifth Amendment, any state prosecution based on the same evidence is violative of the Fifth Amendment.

This reasoning was followed in *Commonwealth v. Katz*, 429 *Pa.* 406, 240 *A. 2d* 809 (1968), a case involving a state lottery conviction based upon evidence seized by federal officers pursuant to warrants alleging violations of the same federal statutes as we are concerned with here.

To effectuate the federal policy of federal-state uniformity and to follow the *Marchetti* and *Grosso* decisions,

as interpreted by the Supreme Court in Katz, defendants contend that the present indictment should be dismissed. They also refer to *Silbert v. United States,* 289 *F. Supp.* 318, a case from the United States District Court for the District of Maryland published or filed on August 15, 1968, which the affidavits for search warrants were supported in allegations of federal wagering tax law violations. The court in *Silbert* said that "this Court orders that the Government may not use, or permit the use, directly or indirectly, of any evidence seized pursuant to the warrants in *Silbert,* in any federal or state prosecution of Silbert * * *".

The State, on the other hand, contends that the United States Constitution does not prohibit the use of the evidence so obtained in a prosecution in the state courts. In referring to *Marchetti,* the State indicates that the court in that case stressed that it was only holding that defendants may not be criminally punished for their failure to comply with the requirements of the federal statutes involved, quoting as they do, "For reasons which follow we have concluded that these provisions may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination." The State concludes, therefore, that the holding is inapplicable to the instant prosecution.

The State argues that since federal officers can no longer obtain search warrants based on failure to comply with the registration provisions of the federal statutes, there is no danger that state courts may use evidence that federal courts may not. Thus, no Fifth Amendment self-incrimination possibility exists and the trend of the federal-state uniformity is not violated.

As the court reviews the arguments made and the authority of *Marchetti* and *Grosso,* it appears that in those cases prosecutions were based upon the failure of defendants to register and pay an occupational tax and an excise tax imposed by the existing federal statutes for engaging in the business of accepting wagers and for conspiracy to avoid the payment of

these taxes. The United States Supreme Court, by these decisions, overruled its position heretofore enunciated, and concluded in *Marchetti,* that, "We hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements."

During the colloquy before this court there was some question in the mind of the Prosecutor as to whether defendants were so asserting their constitutional privilege. It is clear before this court that defendants, all of them, assert their constitutional privilege against self-incrimination, as guaranteed by the Fifth Amendment.

The *Marchetti* Court held:

> "We can only conclude, under the wagering tax system as presently written, that petitioner properly asserted the privilege against self-incrimination, and that his assertion should have provided a complete defense to this prosecution. This defense should have reached both the substantive counts for failure to register and to pay the occupational tax, and the count for conspiracy to evade payment of the tax."

Even though the State suggests that *Commonwealth v. Katz, supra,* is on point and in defendants' favor, it concludes by suggesting that the court in *Katz* fell into error in its decision and that this court should not be bound thereby. That opinion recognized that

> "Emphasizing the comprehensive state and federal system of gambling regulation and the fact that, once an individual has registered under the federal statute, this information is made available to state prosecutors, the Court [in *Marchetti*] obviously bottomed its decision upon [the fact that] * * * if the individual registers, then this information is available to state prosecutors; if he does not register and pay the tax, then he can be prosecuted for failure to do so in federal court. The impact of this legislative package, according to the Court, was a fifth amendment violation."

The court in *Katz* went on to say:

> "Whether this evidence is used in state or federal court, the evil is identical — an accused's failure to register and pay the tax,

as well as evidence seized to prove this failure, becomes the basis
of a criminal prosecution violative of the fifth amendment."

The United States Supreme Court in *Marchetti, supra,*
did not conclude that the failure to register and pay an occu-
pational tax under the federal statutes was unconstitutional.
The court merely stated that the requirement that a person
make known his occupation, when that occupation will ex-
pose him to federal prosecution, is violative of the Fifth
Amendment. The statute is still in effect. Any search war-
rant issued to ferret out violators thereof will be valid.

The vice is not in the statute. The vice is not in the
search warrant. The vice is in requiring a person about to
engage in a gambling operation to make known to the federal
authorities the purpose of his business. That is the vice of
the statute.

The evidence obtained is not tainted. Search warrants can
continue to be issued for the violation of the gambling laws
of the state and federal governments. Prosecutions cannot
be had for the violation of the particular law in question
since to compel a defendant to admit he is a gambler subjects
him to a Fifth Amendment violation. But even if this were
not so, at the time of the issuance of the search warrant in
the instant case the statute was considered valid by the high-
est courts of this country. See *Silbert v. United States,* 282
*F. Supp.* 635 (*D. Md.* 1968).

The statute was considered valid at the time of the issu-
ance of the search warrant, and although the prosecutor is
inclined to agree with defendants, this court does not feel
that in any subsequent prosecution any evidence obtained in
a manner in which this evidence was obtained may not be
used. This court finds as a matter of fact that the statute
was considered valid when the search warrant was issued and,
therefore, any evidence obtained and used for the purpose of
obtaining these indictments is valid.

The issue of whether the indictments should be dimissed
stands or falls on whether the only evidence adduced before

the grand jury was the evidence so obtained. There is no indication before me at this argument concerning this matter, with the exception of the following passing comment by the State: "The aforesaid evidence gathered by the federal authorities was then turned over to the Essex County Prosecutor." The State concedes that it fully intends to use this evidence in the instant prosecution, but there is no indication that it does not have other evidence and there is no indication that nothing other than that obtained from the federal authorities was submitted to the grand jury.

So that for the reasons stated, the motion to dismiss the several indictments will be denied.