A. H. ALEXANDER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

A. H. ALEXANDER AND MARY ALEXANDER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 487–69, 488–69. Filed July 6, 1971.

*Morley H. White*, for the petitioners.
*Robert J. Curphy*, for the respondent.

DAWSON, *Judge:* Respondent determined the following Federal income tax deficiencies and additions to tax:

| Petitioners | Taxable year | Deficiency | Addition to tax, sec. 6653(b), I.R.C. 1954 |
| --- | --- | --- | --- |
| A. H. Alexander | 1963 | $4,172.26 | $2,086.13 |
| A. H. Alexander and Mary Alexander | {1964 | 3,015.25 | 1,507.62 |
| | {1965 | 2,157.99 | 1,078.99 |

In a Memorandum Sur Order dated September 30, 1970, we denied petitioners' motion to dismiss these cases and to suppress the books and records of A. H. Alexander which were obtained by respondent's agents through a raid conducted on March 15, 1965. As reflected in the Memorandum Sur Order, we found that petitioners' books and records were seized pursuant to validly issued search warrants and, therefore, were not illegally obtained. And we stated:

Petitioners also assert that their constitutional rights under the Fifth, Sixth and Fourteenth Amendments have been violated in connection with the development of these cases. The retroactive application of *Marchetti* v. *United States*, 390 U.S. 39 (1968), and *Grosso* v. *United States*, 390 U.S. 62 (1968), to the instant cases will be considered in conjunction with the remaining points raised by petitioners, i.e., the alleged failure by Government agents to inform petitioner A. H. Alexander of his right to remain silent and his right to counsel, when the Court renders its opinion in these cases after trial and submission for decision.

Adjustments relating to dependency exemptions, legal fees, and additions to tax under section 6653(b), I.R.C. 1954, have been resolved by agreement of the parties and will be given effect in the Rule 50 computations.

The issues remaining for decision are: (1) Whether *Marchetti* v. *United States*, 390 U.S. 39 (1968), and *Grosso* v. *United States*, 390 U.S. 62 (1968), apply retroactively to invalidate the search warrants; (2) whether the books and records seized pursuant to the search warrants are admissible evidence in the instant cases; (3) whether at the time of his arrest A. H. Alexander was informed of his right to remain silent and his right to counsel; (4) if not, whether these proceedings are affected thereby; and (5) whether A. H. Alexander owned all or only a part of the Galveston wagering operation.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation and supplemental stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

A. H. Alexander (herein called petitioner) and Mary Alexander are husband and wife who resided in Galveston, Tex., at the time they filed their petitions in these cases. Petitioner, as a single individual, filed a timely 1963 Federal income tax return with the district director of internal revenue at Austin, Tex. Petitioner and Mary Alexander filed timely 1964 and 1965 joint Federal income tax returns with the district director of internal revenue at Austin, Tex. Respondent timely mailed notices of deficiences to petitioners within the period of limitations as extended by duly executed consents.

Petitioner is a gambler, having been instructed in the business by his father, who was also a gambler. During 1963, 1964, and 1965 petitioner ran a policy-wheel operation in Galveston, Tex. During 1965 petitioner also ran a policy and bookmaking operation in Houston. Petitioner was the sole owner of both operations. Fred N. Luckie, an old friend of petitioner, was not a partner in the Galveston wagering operation.

On March 14, 1965, Special Agent Texas E. Brown of the Intelligence Division of the Internal Revenue Service filed a complaint with the U.S. District Court, Southern District of Texas, Houston Division, alleging that Aristos Harry Alexander had violated sections 4411, 4412, 7201, and 7203 of the Internal Revenue Code (26 U.S.C.) by accepting wagers without first registering and paying the occupational tax provided by those sections. On the same day, pursuant to an affidavit executed by Texas E. Brown, the U.S. commissioner of the District Court issued search warrants for a 1962 Oldsmobile, a 1960 Cadillac, the premises at 2917 Tern Street, Galveston, and those

at 2010½ Market Street, Galveston. The search warrants directed Texas E. Brown or any other special agent to seize various kinds of gambling paraphernalia. The U.S. commissioner also issued a warrant of arrest for Aristos Harry Alexander.

On March 15, 1965, Special Agent Brown and other officers arrested petitioner at his home at 2917 Tern Street and seized, among other things, his gambling books and records. These records revealed that the correct net wagering income from the Galveston operation for the taxable years 1963, 1964, and 1965 was as follows:

GALVESTON WAGERING OPERATION FOR TAXABLE YEAR 1963

| Month | Net wagering income after 10 percent sales commission withheld by policy writers | Hits paid out | Other expenses | Net wagering income |
|---|---|---|---|---|
| January | $2,625.70 | $1,196.95 | $515.66 | $913.09 |
| February | 2,220.57 | 933.60 | 902.85 | 384.12 |
| March | 2,184.25 | 1,643.25 | 629.25 | (88.25) |
| April | 1,484.33 | 794.60 | 327.73 | 362.00 |
| May | 2,562.98 | 2,735.83 | 1,000.64 | (1,173.49) |
| June | 2,702.47 | 1,774.25 | 455.84 | 472.38 |
| July | 2,474.19 | 1,201.95 | 563.48 | 708.76 |
| August | 2,892.62 | 1,484.35 | 684.87 | 723.40 |
| September | 2,321.74 | 1,154.55 | 547.79 | 619.40 |
| October | 2,078.40 | 831.85 | 379.74 | 866.81 |
| November | 2,336.51 | 1,449.25 | 782.79 | 104.47 |
| December | 3,059.31 | 2,441.85 | 790.84 | (173.38) |
| Totals | 28,943.07 | 17,642.28 | 7,581.48 | 3,719.31 |

GALVESTON WAGERING OPERATION FOR TAXABLE YEAR 1964

| Month | Net wagering income after 10 percent sales commission withheld by policy writers | Hits paid out | Other expenses | Net wagering income |
|---|---|---|---|---|
| January | $2,431.88 | $1,515.35 | $468.40 | $448.13 |
| February | 1,933.32 | 814.20 | 368.64 | 750.48 |
| March | 1,740.81 | 836.00 | 238.44 | 666.37 |
| April | 1,942.84 | 1,164.35 | 429.88 | 348.61 |
| May | 1,907.63 | 708.20 | 381.25 | 818.18 |
| June | 2,975.59 | 1,742.70 | 473.59 | 759.30 |
| July | 2,339.66 | 1,044.30 | 358.32 | 937.04 |
| August | 2,453.53 | 858.50 | 599.67 | 995.36 |
| September | 1,479.34 | 743.70 | 175.00 | 560.64 |
| October (15 days) | 907.38 | 498.85 | 150.00 | 258.53 |
| November | 1,497.31 | 697.60 | 137.29 | 662.42 |
| December | 2,424.71 | 959.25 | 235.35 | 1,230.11 |
| Totals | 24,034.00 | 11,583.00 | 4,015.83 | 8,435.17 |

GALVESTON WAGERING OPERATION FOR TAXABLE YEAR 1965

| Month | Net wagering income after 10 percent sales commission withheld by policy writers | Hits paid out | Other expenses | Net wagering income |
|---|---|---|---|---|
| January | $2,387.79 | $424.00 | $293.71 | $1,670.08 |
| February | 2,219.81 | 886.30 | 258.85 | 1,074.66 |
| March | 1,228.96 | 230.70 | 113.04 | 885.22 |
| Totals | 5,836.56 | 1,541.00 | 665.60 | 3,629.96 |

One large spiral notebook seized during the raid revealed net wagering income in 1965 of $489.13 from non-Galveston sources, presumably from Houston.

Petitioners reported wagering income under the descriptive label, "Misc. Income," in the amounts of $1,280 and $287.95 on their Federal income tax returns for taxable years 1964 and 1965, respectively.

Petitioner is entitled to a deduction against net wagering income in the amount of $880 for taxable year 1965 as a result of the payment of excise tax on wagering for the period January 1 to March 13, 1965.

At the time of his arrest petitioner was informed of his constitutional right to remain silent and of his constitutional right to counsel.

Petitioner filed his petitions with this Court on February 3, 1969. Fred N. Luckie died on August 31, 1970. Mr. Luckie was seriously ill for a long time before his death. Petitioner did not notify respondent of his alleged arrangement with Mr. Luckie until after Mr. Luckie's death.

During 1963, 1964, and 1965 petitioner derived most of his income from gambling.

A search by the respondent of the appropriate records maintained by the Southwest Service Center of the Internal Revenue Service at Austin, Tex., revealed that there is no record of the filing of Form 730 (Tax on Wagering), or Form 11–C (Special Tax Return and Application for Registry—Wagering) by Fred N. Luckie for any month or annual period, as the case may be, during taxable years 1963, 1964, and 1965.

Upon his plea of guilty, petitioner was convicted in 1966 of failing to register and pay the gambling tax provided in section 7203 of the Internal Revenue Code for the period beginning July 1, 1964, and ending June 30, 1965.

#### OPINION

1. *Evidentiary and constitutional issues.*—Much of the evidence in these cases was obtained from petitioner's gambling records, which were seized under search warrants by respondent's agents. Petitioner argues that *Marchetti* v. *United States*, 390 U.S. 39 (1968), and *Grosso* v. *United States*, 390 U.S. 62 (1968), operate retroactively to invalidate the search warrants, which were issued pursuant to sections 4411, 4412, 7201, and 7203 of the Internal Revenue Code. He reasons (1) that sections 4411 and 4412 are unconstitutional, (2) that what is unconstitutional was always unconstitutional, (3) that the warrants, issued under an unconstitutional statute, were invalid, and (4) that evidence seized under invalid search warrants should be suppressed in these civil tax cases.

The arguments made by this petitioner were considered in *Hugo Romanelli*, 54 T.C. 1448, 1458–1463 (1970), on appeal (C.A. 7). We rejected them. Cases reported subsequently have confirmed our conclusions.

The retroactivity cases beginning with *Linkletter* v. *Walker*, 381 U.S. 618 (1965), and extending, most recently, to *Mackey* v. *United States*, 401 U.S. 667 (1971), *United States* v. *U.S. Coin & Currency*, 401 U.S. 715 (1971), and companion cases, indicate that the Constitution of the United States is not unchanging, and that what is unconstitutional now was not always so. Thus, what was unconstitutional in *Marchetti* and *Grosso* had earlier been held to be constitutional in *United States* v. *Kahriger*, 345 U.S. 22 (1953), and *Lewis* v. *United States*, 348 U.S. 419 (1955). We concluded in *Romanelli* that a search under a warrant issued pursuant to a Supreme Court-approved statute was *not unreasonable*, notwithstanding the fact that the Supreme Court later changed its opinion of the statute. We relied upon *Washington* v. *United States*, 402 F.2d 3 (C.A. 4, 1968), certiorari denied 402 U.S. 978 (1971), involving a pre-*Marchetti* search warrant; *Hamilton* v. *United States*, an unreported case (S.D. N.Y. 1969, 24 A.F.T.R.2d 69–6009, 69–2 U.S.T.C. par 15,924) ; and *State* v. *Gerardo*, 53 N.J. 261, 250 A.2d 130 (1969). Cases published since our opinion in *Romanelli* have given additional support to this view. See *United States* v. *Hanon*, 428 F.2d 101 (C.A. 8, 1970), certiorari denied 402 U.S. 952; *United States* v. *Tiktin*, 427 F.2d 1027 (C.A. 6, 1970), certiorari denied 402 U.S. 950; *Rainey* v. *United States*, 423 F.2d 628 (C.A. 2, 1970) ; *DiPiazza* v. *United States*, 415 F.2d 99 (C.A. 6, 1969), *certiorari denied* 402 U.S. 949; and *State* v. *Sellaro*, 448 S.W.2d 595 (Mo.S.Ct. 1969).

Petitioner's argument that *Marchetti* and *Grosso* invalidated the gambling statutes is erroneous. We noted in *Romanelli* that those cases did not invalidate the statutes, but merely established a fifth amendment defense for failure to comply with their provisions. Thus, in *Silbert* v. *United States*, 282 F. Supp. 635 (D.Md. 1968), the District Court held (1) that a pre-*Marchetti* search warrant was valid and that the fourth amendment did not preclude admission of the evidence, but (2) the defendant had a valid fifth amendment objection to its introduction in his post-*Marchetti* trial. (He was charged with use of interstate commerce for unlawful activity.) See also *Commonwealth* v. *Katz*, 429 Pa. 406, 240 A.2d 809 (1968) (prosecution under State law).

Unlike the District Court in *Silbert*, we think the fifth amendment provides no ground for excluding the seized documents in this post-*Marchetti* civil income tax trial. The seizure of documents under a specific warrant is neither the equivalent of compelling testimony nor

the equivalent of compelling the production of documents under subpoena. We see no fifth amendment problem. *United States* v. *Hanon*, *supra* at 105; *State* v. *Bisaccia*, 45 N.J. 504, 213 A.2d 185 (1965); Note, "Evidentiary Searches: The Rule and The Reason," 54 Geo. L. J. 593 (1966); Rosenfeld, "The Fourth and Fifth Amendments—Dimensions of an 'Intimate Relationship,'" 13 U.C.L.A. L. Rev. 857 (1966); 8 Wigmore, Evidence, sec. 2264; cf. *Warden* v. *Hayden*, 387 U.S. 294 (1967); *United States* v. *Bennett*, 409 F.2d 888, 896–897 (C.A. 2, 1969); contra *Hill* v. *Philpott*, 445 F.2d 144 (C.A. 7, 1971). Moreover, petitioner cannot contend that the admission of existing evidence in a civil trial in any way incriminates him. We do not compel new testimony, and the admission of existing evidence in this trial does not require its admission in any subsequent criminal trial, *John Harper*, 54 T.C. 1121, 1138 (1970).

*Marchetti* and *Grosso* do not grant immunity from excise tax liability or from income tax liability. *Marchetti* v. *United States*, *supra* at 61. We fail to see why evidence seized under search warrants, valid when they were issued, should be excluded in these civil income tax cases. We do not seek to punish petitioner, we seek only to permit the respondent to collect the taxes due. *Helvering* v. *Mitchell*, 303 U.S. 391 (1938).

Petitioner's arguments find no support in *United States* v. *Lucia*, 416 F.2d 920 (C.A. 5, 1969), certiorari denied 402 U.S. 943. There the Court of Appeals reversed a prior conviction, reasoning that the defendant should not remain in jail for actions no longer punishable. See also *United States* v. *U.S. Coin and Currency*, *supra*. Petitioner is not in jail, nor do we punish him. He is merely liable for the income taxes.

Probably we derive some support from *Mackey* v. *United States*, *supra*. There compelled evidence (defendant had registered and paid the tax) was admissible in a post-*Marchetti* criminal income tax evasion case. The lack of a majority opinion by the Supreme Court makes interpretation for purposes of the instant cases difficult. (We do not have a criminal case or collateral attack. See Harlan, *J.*, concurring. Justice Brennan's concurrence is undermined by his dissent on fourth amendment grounds in a later denial of certiorari. *Washington* v. *United States*, *supra*.) However, it seems to us that the case for admission of seized documents in a civil income tax trial is much stronger.

Petitioner further argues that he was not given the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), at the time of his arrest. We have found that he was warned. Moreover, petitioner has failed to show how the alleged failure to warn has placed him at any disadvantage here. Certainly a failure to warn does not make his books

and records, which were seized under separate warrants, inadmissible. Petitioner has not pointed to any damaging utterances made by him and introduced into evidence here. And the fifth amendment objection has no place in this noncriminal tax trial. *John Harper, supra.*

2. *Interest in Galveston wagering operation.*—Petitioner contends that he was not the sole owner of the Galveston wagering operation, but only a bookkeeper for Fred. N. Luckie with a one-third profit interest. We find petitioner's uncorroborated, self-serving testimony to be unreliable and not worthy of belief. The facts and circumstances herein belie his assertions. His principal occupation is and has been gambling since his early childhood. In 1959 he was convicted on a plea of guilty of illegally operating a policy game. Again in 1966 he was convicted on a plea of guilty of willful failure to register and purchase the occupational tax stamp on wagering prior to engaging in the business of accepting wagers. This conviction related to the period beginning on January 1, 1964, and ending March 15, 1965. Even while he was released on bond pending disposition of the criminal charges, petitioner reinstituted illegal policy operations. Prior to the 1966 conviction, agents of the Internal Revenue Service lawfully conducted a raid against petitioner's personal residence located at 2917 Tern Street, Galveston, Tex. During the course of this raid, the agents seized certain spiral notebooks which contained a daily record of a wagering-policy business operated in Galveston, Tex., for the period beginning on or about January 1, 1963, and ending March 15, 1965. All of the daily entries appearing in these notebooks were transcribed by the petitioner. An analysis of these entries revealed net wagering income from the Galveston wagering business as set forth in our Findings of Fact.

No documentary or substantiating evidence of any kind was offered to establish the existence of any type of business arrangement between petitioner and Mr. Luckie. On the other hand, the record reveals that petitioner intentionally failed to notify respondent of this alleged arrangement until after Mr. Luckie's death. Specifically, the evidence shows that respondent was notified for the first time of this alleged arrangement on October 7, 1970. Mr. Luckie had died on August 30, 1970. This conduct is particularly unexplainable since the petitioner has known since 1967 that the Commissioner of Internal Revenue had determined that petitioner solely owned the Galveston wagering operation. He also knew that Mr. Luckie was and had been seriously ill. Despite this knowledge, he deliberately chose not to notify respondent in time to verify his allegations.

In an effort to ascertain the truth of petitioner's contention, respondent caused a search to be made of the records maintained by the Government at the Southwest Service Center, Austin, Tex. This

search revealed the Center has no record of the filing of Form 730 (Tax on Wagering) or Form 11-C (Special Tax Return and Application for Registry-Wagering) by Fred N. Luckie for any month or annual period for 1963, 1964, and 1965.

Additional evidence indicating no arrangement existed between petitioner and Mr. Luckie is observed from the manner in which wagering income was reported on the petitioner's 1964 and 1965 Federal income tax returns. Petitioner reported wagering income in the amounts of $1,280 and $287.95, respectively, under the descriptive label of "miscellaneous income." These returns did not contain a reporting of gross receipts, gross income, deductions and division of profits. They were also misleading because they failed to disclose that petitioner had estimated wagering income and that he did not report any wagering income earned from his Houston policy operation during the year 1965.

Petitioner stated that during the years in issue his "main source of income was from some form of gambling." He agreed that his net wagering income for such years was $3,719.31, $8,435.17, and $3,629.96, respectively. One-third of these amounts would yield petitioner $1,239.77, $2,811.72, and $1,209.99. We think he would be hard-pressed to show that he and Mrs. Alexander could live on those amounts.

Accordingly, we hold on this record that petitioner was the sole owner of the Galveston wagering operation during the years 1963, 1964, and 1965, and is liable for the income taxes due on the net wagering income earned from that business.

To reflect the conclusions reached herein and the concessions made by the parties,

*Decisions will be entered under Rule 50.*