**William F. McALISTER, Plaintiff,**

v.

**Sheldon S. COHEN, Commissioner of Internal Revenue, Washington, D. C., and Hugh D. Jones, District Director of Internal Revenue Service, Parkersburg, West Virginia, Defendants.**

Civ. A. No. 2476.

United States District Court
S. D. West Virginia,
Huntington Division.

Jan. 15, 1970.

Robert H. Burford, Beckett, Burford & James, Huntington, W. Va., for plaintiff.

John S. Kingdon, Richard A. Scully, Trial Attys., Dept. of Justice, Washington, D. C., Wade H. Ballard, III, U. S. Atty., Bluefield, W. Va., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendants.

CHRISTIE, District Judge.

In this civil action, the plaintiff asks this Court to enjoin the defendants from making an assessment against him for unpaid federal wagering tax liabilities under Sections 4401[1] and 4411[2] of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4401 and 4411, on the grounds that these statutes and Section

1. Imposing a 10% excise tax on wagers.

2. Imposing a special tax of $50.00 per year on persons liable for the wagering tax imposed by Section 4401.

4412[3] of the same Code, requiring him to register as a person liable for such taxes, are constitutionally impermissible under the Fifth Amendment[4] to the Constitution of the United States and Article IV, Section 2[5] of the Constitution of the United States; that the proposed tax assessment is based upon evidence obtained in an illegal search and seizure in violation of his rights under the Fourth Amendment[6] to the Constitution of the United States, and further, that the making of such proposed assessment would deprive him of his property and business without due process of law.

The defendants have moved to dismiss on the grounds (1) that equity jurisdiction does not lie because the plaintiff has an adequate remedy at law under Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7422, which allows suit to be brought by a taxpayer for a refund of taxes alleged to have been erroneously or illegally assessed or collected by the Internal Revenue Service, and (2) that the maintenance of the action is specifically barred by Section 7421(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7421, which provides in pertinent part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." For the reasons hereinafter to be stated, the defendants' motion to dismiss must be granted.

It appears from the record before the Court that on November 20, 1965, special agents of the Internal Revenue Service searched the premises of plaintiff's place of business, known as Billy's Place, located at 440 West Eighth Avenue, Huntington, West Virginia, and seized certain books, records, money and gambling paraphernalia. Plaintiff was thereafter summoned to answer a criminal information charging him with failing to register and to pay the requisite taxes. The information was later dismissed on motion of the United States Attorney because the statutes underpinning it had meanwhile been found to be unconstitutional and unenforceable by the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

Subsequently, by letter dated June 3, 1968, and over the signature of Paul Cooper, Jr., Internal Revenue Agent, plaintiff was advised that while the criminal aspects of his pending wagering tax case had been dismissed, his civil tax liability was considered during the criminal investigation and it had been determined to amount to $27,705.92. This amount was admittedly computed by a projection of an average daily bet over the years of 1963, 1964 and 1965. The figure for the average daily bet was largely ascertained from the records that were seized. In addition, plaintiff was further advised that he was liable for occupational stamp taxes and penalties in the amount of $362.50. The letter further advised plaintiff that if he was not heard from within ten days it would be assumed that he did not wish to discuss the case or present additional records, in which event the proposed assessment would be processed. In reply, plaintiff advised Mr. Cooper by letter that the records upon which the proposed assessment was based were taken from him as a result of an unlawful search and seizure; he demanded their return and asserted his Fifth Amendment privilege against self-incrimination. Then, by letter dated August 8, 1968, over the signature of Hugh D. Jones, District Director, Internal Revenue Service, plaintiff received a "30-day letter," the import of which was that if

---

3. Requiring a person liable for the taxes imposed by Sections 4401 and 4411 to register with the resident internal revenue agent in charge of the district.

4. A citizen's privilege against self-incrimination.

5. A citizen of one state shall have the same privileges and immunities as citizens of the several states.

6. A citizen's right to be secure from unreasonable searches and seizures.

the plaintiff did not request a conference or file a protest within 30 days, the Internal Revenue Service would proceed to make an assessment against him on the basis of their investigation.[7] Fearing that to make an effective protest he would have to bring forth records and make statements which would tend to incriminate him, and believing the proposed assessment to be illegal under *Marchetti* and *Grosso* and other applicable decisions, the plaintiff chose instead to institute this action for injunctive relief.

To get such relief, it must be made to appear (1) that the tax sought to be imposed is so illegal that the Government under no circumstances could ultimately prevail, and (2) that special and extraordinary facts and circumstances sufficiently appear to call for equity intervention by way of injunction. These guidelines were laid down by the Supreme Court in Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932) and Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1579, 8 L.Ed.2d 833 (1962), and are binding upon us in this case.

In *Nut Margarine*, the constitutionality of the statute[8] was not at issue. Three lower courts in as many cases had held that products identical in content and appearance to the one there involved were non-taxable. The Government acquiesced in these decisions and took no appeal from them. The Commissioner of Internal Revenue, in answer to an inquiry from the Institute of Margarine Manufacturers as to the taxability of one of the products, advised:

"The court, having held the product to be not taxable as oleomargarine, the fact that retailers advertise and sell it as butter, or as a substitute for butter, would not render them or the manufacturers liable under the internal revenue law."

However, the Commissioner later sought to impose the tax on another product which was identical in content and appearance to the ones involved in the prior litigation and which the courts had found to be not subject to the tax and with which the Commissioner had concurred by his answer to the inquiry from the Institute of Margarine Manufacturers. In a suit to enjoin the Commissioner, the Court, in affirming in *Nut Margarine*, found that the taxpayer had acted reasonably in believing its product to be non-taxable and that to permit the tax to be enforced, in view of the small margin of profit involved, would place upon the taxpayer a liability he could not pay and would be ruinous of his business, for which he would have no adequate remedy at law, allowing the Court, under such circumstances, under its broad equity powers, to enjoin enforcement, notwithstanding the proscription of Section 7421(a). But the Court, in *Enochs*, though recognizing the doctrine of equity intervention pronounced in *Nut Margarine*, was unable to agree that Section 7421(a) does not bar suit for an injunction against the collection of taxes not due if the legal remedy is inadequate. Elaborating at p. 6, 82 S. Ct. at p. 1129 the Court said:

"* * * (I)f Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise."

---

7. Nowhere in the complaint or in the plaintiff's affidavit for the injunction sought does he deny the correctness of the amount of the taxes proposed to be assessed against him.

8. Oleomargarine Tax Act, 26 U.S.C.A. § 4591 et seq.

Continuing, at p. 7, 82 S.Ct. at p. 1129, the Court said:

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. * * *

"We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed."

The taxpayer in the Enochs case had sought to enjoin the District Director of Internal Revenue from collecting social security taxes on the ground that he was not an employer but an independent contractor. As a ground for equitable relief, he relied upon the doctrine enunciated in *Nut Margarine* that collection of the tax would cause him irreparable harm, for which he had no adequate remedy at law. Rejecting the doctrine as being unsound, the *Enochs* Court went on to find no basis in fact to warrant judicial intervention, and concluded by citing Snyder v. Marks, 109 U.S. 189, 194, 3 S.Ct. 157, 27 L.Ed. 901, for the general proposition that "when the collecting officers have made the assessment and claim that it is valid" Section 7421(a) "prohibits suits for injunctions barring the collection of federal taxes."

It is readily apparent, therefore, that the *Enochs* decision makes it very difficult for a taxpayer to get an order enjoining the collection of a federal tax. He may not do so merely on the basis of a *belief* that the tax is illegal or *might* ultimately be held to be illegal. To the contrary, it must appear to be so illegal and uncollectible at the time of suit that the Government, on the basis of information available, has *no chance of ultimately prevailing*. Obviously, this requirement is hard to overcome and a taxpayer rarely has been able to do so. Nor may the tax be enjoined on the basis that the taxpayer has no adequate remedy at law or that its collection would work a hardship upon or even wreck the taxpayer financially. More compelling facts and circumstances must be made to appear before the Court can intervene through its equity jurisdiction. No such facts or circumstances are revealed by the record before us. Indeed, the opposite would seem to appear. First of all, the plaintiff has an adequate remedy at law under Section 7422. There he can pay a portion of the tax and sue for refund. To take advantage of this remedy, it is conceded by his counsel that plaintiff is not required to pay the entire amount of the proposed assessment, as he would have to do if the claim were for income taxes. In this type of case, the plaintiff can pay the tax on a single transaction, which would be a relatively small sum, bring suit for a refund and thereby test not only its legality but the method used by the defendants for its ascertainment as well. Plaintiff's affidavit detailing his financial worth shows plainly an ability to pay and the absence of any circumstances indicating that payment would work any undue hardship upon him, and since the defendants have given written assurances that no steps will be taken to collect the proposed assessment pending the outcome of the refund litigation, no present need is evident requiring the granting of extraordinary relief.

The Fourth Circuit has had occasion to discuss the *Enochs* decision on two

occasions and has recognized the stringency of its requirements. Johnson v. Wall, 329 F.2d 149 (1964); Floyd v. United States, 361 F.2d 312 (1966). Neither gives any comfort to the position taken by the plaintiff in this case.

It is true that the Supreme Court, in *Marchetti* and *Grosso*, struck down as unconstitutionally void the criminal sanctions imposed for failure to register and pay the taxes in connection with wagering activities, but throughout the Court's opinions in those cases and in Mr. Justice Warren's dissent in *Marchetti*, it is made perfectly clear that the Court's only concern was with safeguarding the defendants' privileges against coerced self-incrimination for a criminal offense, and it did not extend such protection to a taxpayer to be used as a device to frustrate the Internal Revenue Service in enforcing his civil tax liability arising from a wagering activity. The Court, at page 44 in *Marchetti*, 88 S.Ct. 697, specifically recognized the power of Congress to tax an unlawful activity, such as wagering, and it took pains at page 61, 88 S.Ct. at page 709, to guard against its decision being interpreted that the civil tax liability arising from a wagering activity was being invalidated. The contrary was made very explicit by this language of the Court:

> "We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be *criminally* punished for failure to comply with their requirements." (Emphasis supplied).

As an abstract proposition, this doctrine was endorsed by the Fourth Circuit recently in the case of Washington v. United States, 402 F.2d 3 (1968), wherein it was found that the language of the Supreme Court in *Marchetti* and *Grosso* indicated no holding that the wagering excise tax is constitutionally impermissible or even that a properly asserted claim of the privilege against

self-incrimination would extinguish the civil liability for the payment of the tax. Thus, it is clear that the civil liability of the taxpayer with respect to the taxes here involved is in no way invalidated by *Marchetti* and *Grosso*. Counsel for the plaintiff seem to concede as much in their brief where they say, "therefore, the real nature of the injunction prayed for is against the use of illegally seized evidence and not against the collection of the tax." Considering the issue as thus narrowed, and with the Supreme Court in *Marchetti* saying that it fully recognized the power of Congress to pass the legislation and impose the taxes in question, and with that Court expressly limiting the voiding of the statutes to prevent only coerced criminal self-incrimination, and with the Fourth Circuit saying in *Washington* essentially the same thing, and with plaintiff's counsel now apparently conceding that the statutes remain viable to the extent that they are used to enforce and protect the public revenues and not used primarily to compel incriminating disclosures of criminal activities, it would be the sheerest of speculation for this Court to hold that the proposed assessment has no legal efficacy, which we would necessarily have to do to avoid the strictures of *Enochs*.

With the case in this posture, it would seem to us that the plaintiff's only real concern at this stage should be that any incriminating disclosures necessary for him to make in order to maintain his refund action be not used against him in any subsequent federal or state criminal prosecution. Such relief may not, however, be granted in a proceeding to enjoin collection of a tax. See Zamaroni v. Philpott, 346 F.2d 365 (7th Cir.1965) where it was held that,

> "Collateral determination of the admissibility of evidence in an administrative tax proceeding or investigation is not a proper sphere for injunctive intervention in the exercise of equitable jurisdiction,"

notwithstanding the exclusionary rule announced in Elkins v. United States,

364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Nor do we perceive any real basis for plaintiff's apparent belief that he could be afforded greater Fifth Amendment protection in this injunctive action than in an action for refund. As to possible federal prosecution, he is fully insulated from it by *Marchetti* and *Grosso*. This was recognized by the United States Attorney in moving to dismiss the information. As to possible state prosecution, plaintiff's attention is directed to Section 5, Article 3, of the Constitution of West Virginia where it is provided that,

"No person * * * in any criminal case, be compelled to be a witness against himself * * *."

This language is identical with that of the Fifth Amendment to the Federal Constitution, and West Virginia's highest court has held that the decisions of the United States Supreme Court dealing with this clause of the Fifth Amendment are entitled to the greatest consideration by the courts of that state. State v. Abdella, 139 W.Va. 428, 82 S.E. 2d 913 (1954). So it is seen that since the federal government cannot proceed against the plaintiff criminally because of *Marchetti* and *Grosso* and since he has the right under the West Virginia Constitution to assert the privilege against self-incrimination should that state attempt to prosecute him for his wagering activities, he can be put to no hardship or danger by paying the tax on a single transaction and prosecuting a tax refund action. For, as was pointed out by the Fourth Circuit in the recent case of United States v. Walden, 411 F. 2d 1109 (1969):

"There is no constitutional guarantee against being required to provide information from which it *might* be determined that some legal violation has occurred. * * * The privilege against self-incrimination assures, rather, that one may not be compelled to provide information which would provide a 'real and appreciable' and not merely 'imaginary and unsubstantial' hazard that a significant 'link in

a chain' of evidence would be established to prove guilt. * * * Where there is no real danger, there is no privilege."

■ The plaintiff relies heavily on Pizzarello v. United States, 408 F.2d 579, a Second Circuit opinion issued in 1969. The facts are very similar to those in the case at bar, with the exception that Pizzarello's criminal conviction was reversed following *Marchetti* and *Grosso*, while the charges against the plaintiff here were dismissed upon the motion of the United States Attorney following the Supreme Court rulings. There the Court concluded, under the facts of that case, that Pizzarello's "legal remedy" was inadequate and the circumstances sufficient to overcome the prohibition of Section 7421(a) because his burden of proof in a refund suit would cause him to lose his privilege against self-incrimination and would, therefore, subject him to possible prosecution by the New York State authorities. While it is not shown what, if any, safeguards are provided by the state of New York against compulsory self-incrimination, we agree with the reasoning of the Fifth Circuit in Campbell v. Guetersloh, 287 F.2d 878, 881 (1961), cited with approval by the *Zamaroni* Court, that this Court should not attempt to control the admission of proof before the administrative agency completes its lawful functions. This could best be done in the tax refund action. The possibility of state prosecution was more recently raised in United States v. Walden, supra, where the conviction was for carrying on the business of a distiller without having given bond as required by Section 5173, Title 26, of the Internal Revenue Code of 1954, but it was there found to be too "imaginary and unsubstantial" to be a determinative factor. It does not appear from the decision in *Walden* whether North Carolina's Constitution has a provision against compulsory self-incrimination or not. However, whatever persuasion the *Pizzarello* decision might have initially had, it now stands pretty well diluted in this

**524**

circuit by the *Washington* and *Walden* decisions.

It is, therefore, concluded that, by applying the two-part test made mandatory by *Enochs* and followed in this circuit in *Johnson* and *Floyd* it must be found that the plaintiff has failed to establish that the assessment sought to be enjoined is so patently illegal that under "no circumstances" could the Government's claim ultimately prevail, and further that he has also failed to show the presence of sufficient equitable considerations to give this court requisite jurisdiction to intervene and thereby circumvent the mandate of Section 7421(a), the plain object of which is to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs*, 370 U.S. p. 5, 82 S.Ct. p. 1128. The remaining contention that the proposed assessment would deprive the plaintiff of his property and business without due process of law, viewed in the context of the factual background enumerated, is found to be wholly without merit, since utilization of the procedures made available to him by Section 7422 will afford him such protection.

For the reasons above appearing, an order will be made granting the defendants' motion to dismiss.