**Othello WASHINGTON and Ellen P. Washington, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 10766.**

United States Court of Appeals Fourth Circuit.

Argued June 17, 1968.

Decided Sept. 17, 1968.

Werner Strupp, Washington, D. C. (Whitford W. Cheston, Fairfax, Va., on the brief), for appellants.

John M. Brant, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Attys. Dept. of Justice, Claude V. Spratley, U. S. Atty., and John D. Schmidtlein, Asst. U. S. Atty., on the brief), for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

**4**

BOREMAN, Circuit Judge:

This is an appeal from a judgment of the district court ordering the public sale of certain real estate owned by taxpayer, Othello Washington, in satisfaction of the government's lien for excise tax deficiencies plus delinquency penalties and interest under federal wagering tax statutes.[1] The government's lien arises from a wagering tax assessment against Othello Washington imposed pursuant to Internal Revenue Code of 1954, 26 U.S.C. § 4401 (1964 ed.), plus a fifty percent fraud penalty assessed pursuant to 26 U.S.C. § 6653(b) (1964 ed.).

The complaint alleged that excise taxes and fraud penalties had been duly assessed pursuant to §§ 4401 and 6653(b) of the Internal Revenue Code; that there was an outstanding delinquency of $227,645.58 plus interest; that demand for payment had been made; that taxpayer was the owner of a farm consisting of 393 acres within the jurisdiction of the court; and that the Metropolitan Life Insurance Company and taxpayer's wife, Ellen, might claim an interest in the property. The complaint prayed that the government's lien be declared valid; that the interests of all parties be determined; and that the farm be sold and the proceeds be distributed. Taxpayer filed an answer alleging that the amount of the government's assessment was excessive. His wife, Ellen, answered alleging that she had a dower interest in the land.

In pretrial proceedings taxpayer admitted that he was liable for wagering excise taxes but stated that, while he had no records, the amount claimed was excessive and should be only about $97,-000.00. At the trial there was testimony that Internal Revenue agents, after observing evidence indicating a gambling operation at the farm, obtained a search warrant, raided the premises on May 2, 1961, and discovered taxpayer in the act of conducting a gambling operation. Taxpayer conceded that the search warrant was properly issued and executed.

His only defense, based solely on his own recollection, was that the amount of the assessment was excessive.

The district court rejected taxpayer's testimony and upheld the section 4401 excise tax assessments against him (with a slight reduction to correct an error in the method of calculation) disallowing, however, the assessment of the fifty percent fraud penalty because of the lack of evidence to support it. From this disallowance the Government has not appealed. In view of the taxpayer's failures to file returns the court directed imposition of a twenty-five percent delinquency penalty but in its brief and at the bar of the court the Government concedes that the judgment should be reversed insofar as it awarded delinquency penalties for the reason that the Government had not sought the imposition of such penalties and the same had not been included in the assessment.

It was stipulated in the court below that the claim of the Metropolitan Life Insurance Company and the dower interest of taxpayer's wife were superior to the government's lien. The court directed that the farm of 393 acres owned by Othello Washington be sold at public sale free and clear of all liens and interests (including the wife's dower), the same to attach to the proceeds of sale.

During the pendency of this appeal and following the filing of appellants' brief, upon joint motion of the parties, this court entered an order directing that further proceedings be held in abeyance pending the decision of the United States Supreme Court in Grosso v. United States. On January 29, 1968, the Supreme Court handed down its decision in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, and also in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, both cases dealing with various constitutional aspects of the wagering tax laws. Following these decisions, at the direction of this court, the appellants submitted a supplemental memorandum addressed to

---

1. The district court's opinion is reported, United States v. Washington, 251 F.Supp. 359 (E.D.Va.1966).

the questions decided by the Supreme Court in the two cases above noted.

Two questions are presented for our determination: (1) Whether the judgment against Othello Washington, based on the ten percent wagering excise tax, should be set aside because of the decisions of the Supreme Court in the *Grosso* and *Marchetti* cases; and (2) whether, in this action by the United States to enforce a federal tax lien (with respect to real estate), the trial court erred in ordering the sale of the real estate belonging to taxpayer free of the inchoate dower interest of taxpayer's wife.

Appellants seek an outright reversal of the judgment establishing the tax deficiency, solely on the basis of what they conceive and assert to be the necessary implications of the *Grosso* and *Marchetti* decisions. They contend that the wagering excise tax statute has now been declared to be wholly unconstitutional; and that, in any event, the government's computation of the tax assessed is based solely upon evidence which should be excluded because obtained under an invalid search warrant. We conclude that the appellants' reliance upon the *Grosso* and *Marchetti* cases to support their contention that the imposition of the excise tax was constitutionally impermissible is misplaced.

The language of the Supreme Court in both decisions above cited indicates no holding that the excise tax is constitutionally impermissible or even that a properly asserted claim of the privilege against self-incrimination would extinguish the liability for the payment of taxes. In *Grosso* the Court held only that a proper claim of privilege against self-incrimination precludes a *criminal conviction* based on the failure to pay the tax, while in *Marchetti* it was held that a proper claim of privilege against self-incrimination precludes a *criminal conviction* for willful failure to pay the $50 annual occupational tax, 26 U.S.C. § 4411, or to fulfill the registration requirements. The Court emphasized the nature of its holding in *Marchetti* as follows:

"* * *. We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes." 390 U.S. at 61, 88 S.Ct. at 709.

Furthermore, in *Grosso,* where the petitioner had been convicted on charges of willful failure to pay the excise tax imposed on wagering by 26 U.S.C. § 4401, on charges of willful failure to pay the special occupational tax imposed by 26 U.S.C. § 4411, and on a charge of conspiracy to defraud the United States by evading payment of both taxes, the Court explicitly stated in footnote 7 (390 U.S. 62, at 69–70, 88 S.Ct. at 714):

"Section 4411 provides that the occupational tax must be paid 'by each person who is liable for tax under section 4401' and by each person who receives wagers for one liable under § 4401. It might therefore be argued that since petitioner is entitled to claim the constitutional privilege in defense of a prosecution for willful failure to pay the excise tax, he is thereby freed from liability for the occupational tax. *We cannot accept such an argument.* We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extinguishes liability for taxation; *we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax.*" (Emphasis supplied.)

Appellants contend that the Court in *Grosso* nullified the excise tax and the entire self-assessment scheme for its collection and, having done so, the Court

was merely suggesting in the footnote 7 quoted above that future legislation might devise a valid tax enforceable by different methods not involving self-incrimination. We conclude, however, that the Court in *Grosso* carefully avoided holding that the tax itself was void. The court expressly stated:

> "We do not hold today * * * that a proper claim of privilege extinguishes liability for taxation; we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax."

In view of the Supreme Court's express disclaimers, we are of the opinion that the civil liability here involved remains entirely valid and that the only question of a constitutional nature which could arise here would involve only a collateral matter such as whether the procedures used in this case for determining or collecting the tax were so violative of fundamental rights as to require the overturning of a judgment thus procured.

Appellants contend that the government's evidence was wholly founded on documents seized by Internal Revenue agents in the raid of the taxpayer's farm property and, consequently, the evidence "was acquired under circumstances which the highest Court has now declared to be in violation of fundamental constitutional rights." Admittedly, the evidence in support of the government's tax computations was based on numbers —game records seized in the raid. But in the proceedings below appellants did not challenge the validity of the raid and the taxpayer's only objection was that the assessment of the tax due was excessive. At trial, appellants' counsel expressly stated that he did not question the validity of the search warrant under which the raid was conducted and he did not object to the admission in evidence of the material seized in the raid.

However, appellants now contend that the search warrant is invalid under the *Marchetti* and *Grosso* decisions. We find no support in those cases for appellants' contention. The Supreme Court did not invalidate the wagering tax statutes; it did not abolish the criminal offenses therein specified; it did not say that an indictment or an information would not lie. The carefully circumscribed holding is that a defendant may not be *convicted* of a criminal violation of the wagering tax laws *if* he has properly claimed his constitutional privilege against self-incrimination. Under the circumstances, we conclude that where, as here, there exists probable cause for belief that an offense has been committed (which appellants conceded) a valid search warrant may issue even though the Government may be unable *to* convict the defendant if he properly raises his claim of privilege against self-incrimination.[2] We hold that the judgment for wagering excise tax deficiencies rests upon a valid assessment and will be affirmed.

The more difficult problem before this court has to do with the propriety of the sale of the taxpayer's real estate free of his wife's contingent or inchoate dower interest. It is urged that this court should follow the decision in Folsom v. United States, 306 F.2d 361 (5 Cir. 1962), where it was held that 26 U.S.C. § 7403(c), which authorizes the court to order the sale of a taxpayer's *property*, refers to the taxpayer's "interest" in the property that is subject to sale rather than the "property" itself. Section 7403 (c) reads as follows:

> "The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases

**2.** In the instant case taxpayer, Othello Washington, did not raise the privilege against self-incrimination in the court below. It is true that in one of the two criminal cases which followed the search and seizure he moved to suppress the evidence obtained under the warrant on grounds other than self-incrimination. After that motion was denied he entered a plea of guilty in the related criminal case and was sentenced to imprisonment.

where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sales according to the findings of the court in respect to the interests of the parties and of the United States."

The appellants further argue that the trial court cannot modify the nature and extent of interests in property which are created by state law when that law provides that they are not subject to such termination. The case of Harmon v. Peery, 145 Va. 578, 134 S.E. 701 (1923), is cited in support of the argument that Virginia does not consider a wife's dower interest as passing to the purchaser at a judicial sale of the husband's real property.

■■ We are disposed to follow the holding in United States v. Trilling, 328 F.2d 699 (7 Cir. 1964), which is in conflict with *Folsom*. *Trilling* is distinguishable from the instant case in that the husband taxpayer owned an undivided one-half interest in the subject real estate in joint tenancy with his wife. It was there held that the entire property, rather than merely taxpayer's interest therein, was subject to sale and that one-half of the proceeds should be applied to the satisfaction of the government's tax lien. We quote from *Trilling*, 328 F.2d 699 at 703, as follows:

" * * *. But in our judgment Folsom overlooks the fact that in § 7403 Congress has expressly authorized the district court to subject 'any property' in which the delinquent taxpayer 'has any right, title, or interest' to the payment of 'such tax or liability'; has required that 'all persons' claiming any interest 'in the property involved' be made parties to the proceeding; and has empowered the court to order a sale 'of such property' and direct distribution of the proceeds of such sale according to the 'interests of the parties and of the United States.' The express language of the statute negates any design or intent on the part of Congress to limit the reach of the statute to the 'interest' of the taxpayer as distinguished from the 'property' in which he has such 'interest'. This being so we are of the view that a proper recognition of the teachings of Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 and United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135, requires the conclusion that once the state law has been applied to ascertain the taxpayer's state-created property interests—to govern the determination of whether the taxpayer has 'property' or an 'interest in property' to which the lien attaches—we enter the province of federal law in subjecting the property involved to the discharge of the tax liability. As Mr. Chief Justice Warren had occasion to observe in Aquilino (363 U.S. 509 at 514, 80 S.Ct. 1277 at 1280–1281, 4 L.Ed.2d 1365): 'This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes.' "

■ We conclude that the wife's inchoate dower interest in the taxpayer's real estate is subject to termination by the sale of the taxpayer's property pursuant to the order of the district court under section 7403(c) which allows all claims to be determined and satisfied from the proceeds of such sale at public auction. The prior lien of Metropolitan Life Insurance Company and the properly ascertained value of the dower interest will be first satisfied from the sale proceeds and the balance applied to the tax lien.

The case is remanded to the district court for a recomputation to eliminate the delinquency penalty imposed, but in all other respects the judgment is affirmed.

Affirmed in part, reversed in part, and remanded.