STATE OF NEW JERSEY, PLAINTIFF, v.
ANDREW GERARDO, *ET AL.*, DEFENDANTS.

Argued February 4, 1969—Decided February 17, 1969.

*Mr. Harold Krieger* argued the cause for defendant Gerardo (*Mr. Nicholas H. Politan*, of counsel; *Messrs Krieger, Chodash and Politan*, attorneys).

*Mr. Donald S. Coburn*, Assistant Prosecutor, argued the cause for the State (*Mr. Joseph P. Lordi*, Essex County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant, with 18 others, is under indictment for violating the lottery laws of our State. The trial court denied his motion to suppress evidence he contends was illegally seized and to dismiss the indictment obtained by use of that evidence. The Appellate Division denied leave to appeal. Defendant now moves before us for such leave. At our request oral argument was had on this motion. Defendant's brief tenders the question whether the evidence must be suppressed because it was seized to support a federal

prosecution which could not be successfully maintained under decisions of the United States Supreme Court handed down after the searches were made.

The evidence was obtained by federal authorities under warrants which were duly sought and duly issued. Thereafter, the federal indictments were dismissed on the authority of *Marchetti v. United States,* 390 *U. S.* 39, 88 *S. Ct.* 697, 19 *L. Ed. 2d* 889 (1968), and *Grosso v. United States,* 390 *U. S.* 62, 88 *S. Ct.* 709, 19 *L. Ed. 2d* 906 (1968), which held that a plea of .the Fifth Amendment privilege against self-incrimination would defeat prosecutions under the federal wagering statute for willful failure to register before engaging in the business of accepting wagers and for failure to pay a tax upon that occupation. Defendant contends it should follow that the use of the federally seized evidence in a State prosecution would likewise offend his right under the Fifth and also his right under the Fourth Amendment. We cannot find an infringement of either constitutional value.

The issue must be considered in the context of the values involved. It is an unhappy fact that the capacity of the judicial process to deal with the demands of law enforcement is doubted by a substantial body of responsible men. The reasons are several. One is the lengthening line of decisions which suppress the truth or block access to it. It is idle to suppose, as some do, that those decisions have no impact upon law enforcement or at the worst only a minimal one. The realities abound the other way. Nor should the topic be obscured by invoking the presumption of innocence. The presumption has no role on a motion to suppress. Such motions are not made for an academic end. The purpose is to suppress proof which will likely convict, so that offenders will go free.

It bears repeating that the first right of the individual is to be protected from criminal attack. That is the reason for government. The responsibility to that end rests no less upon the judiciary than upon its coordinate branches. If the

judiciary exerts its undoubted power to create new constitutional doctrines, it must first learn what authority the other departments must have. The need must be found, not in abstract contemplation, but in the tumult of the streets. Cliches and slogans will not do. So it throws no light to inveigh against a "police state." It would be a bit absurd to say ours was a police state before, let us say, *Mapp v. Ohio*, 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961), or to deride in such terms every nation which does not suppress the truth (if indeed there is any which does).

All the competing rights involved belong to the individual. The State has none — it has only duties, and powers with which to discharge them. To set criminals free is to exact a price, not from some pain-free societal entity, but from innocent individuals who will be their next victims. There are other hurts as well, for the suppression of proof of guilt must weaken respect for the reach of the law, thereby increasing the toll of victims and injuring as well those offenders who might have been deterred from a career of lawlessness. Some would add their belief that current doctrines tend to corrupt officials who, struggling to cope with the dirty realities of crime, strain to bring the facts within unrealistic concepts. These trespasses upon the first right of the individual to be protected from attack should not be suffered unless it is plain that some larger individual value is served.

The question then is whether there is such other value here which rises above the first right of the individual. If not strictly relevant, it is at least noteworthy that the evidence we are asked to suppress relates to syndicated crime, for it is syndicated crime which, above all other, has found a haven in the suppression of the truth.

With these matters in mind, we turn to the issues offered on the motion for leave to appeal. As to the Fifth Amendment, it is not claimed that the evidence was obtained as the result of any disclosure defendant was compelled to make under the statute. On the contrary, as we understand the

situation, none of the defendants made any disclosure; the federal indictments were for failure to register and failure to pay the occupational tax. Rather the argument is that since a plea under the Fifth Amendment would defeat the federal prosecution, it somehow should follow that any use of the evidence to establish a violation of some other criminal law must also offend the privilege against self-incrimination.

Defendant is supported by *Commonwealth v. Katz,* 429 *Pa.* 406, 240 *A.* 2d 809, 811 (*Sup. Ct.* 1968), where the proposition is put this way:

"\* \* \* We therefore believe that if a federal prosecution based upon violations of sections 4411 and 4412 (and evidence seized to prove these violations) would infringe the accused's privilege against self-incrimination and if this privilege applies to the states, then a state prosecution based upon the same evidence seized by federal officers would equally violate that privilege. \* \* \*"

We think there is an unbridgeable gap between the premise and the conclusion. *Marchetti* and *Grosso* did not find it was the use of seized evidence which infringed the Fifth Amendment privilege. Rather it was the statutory demand for registration and for payment of the occupational tax which involved the privilege, and for the reason that one who complied would thereby furnish evidence of his violation of gambling laws. The Fifth Amendment issue would be the same if proof of a defendant's violation of the federal statute were obtained solely from third parties. The opinions nowhere intimated the Fifth Amendment would be infringed by the use of evidence the defendant did not himself furnish in obedience to the statute. In fact, *Marchetti* rejected the suggestion that the constitutional difficulty be obviated by preventing the use in a Federal or State prosecution of a disclosure made in compliance with the statute by one claiming the privilege. 390 *U. S.* at 58–60, 88 *S. Ct.* 709, 19 *L. Ed.* 2d at 903–905.

Defendant cites *Silbert v. United States,* 282 *F. Supp.* 635, 646–648 (*D. Md.* 1968), where seized evidence was suppressed

upon the thesis that if the defendant had complied with the federal wagering tax law requirements, there would not have been a search. In that way, a connection was found between the defendant's reliance upon the Fifth Amendment privilege and the subsequent acquisition of the evidence. We think this but-for connection is remote and irrelevant to the present context. *Cf. United States v. Wallace & Tiernan Co., 336 U. S. 793, 799, 69 S. Ct. 824, 93 L. Ed. 1042, 1049* (1949). The decisive fact remains that defendant was not "compelled * * * to be a witness against himself," and that is what the Fifth Amendment prohibits. Under that Amendment the use of evidence can be of no moment so long as the defendant was not himself coerced into supplying it. So a defendant who refused to admit guilt could hardly maintain that evidence the State thereafter seized should be suppressed because, had he waived his Fifth Amendment privilege and confessed, the search would have been unnecessary and hence would probably not have been made. This, in essence, is what defendant's proposition comes to, in terms of the Fifth Amendment privilege. The application is to suppress evidence of guilt, the truthfulness of which was in nowise tainted by the manner of its acquisition. Recurring to the values discussed at the outset of the opinion, we see no good reason to suppress the truth at the expense of the primary right of the individual to be protected from crime.

As to the Fourth Amendment, defendant cites *Silbert v. United States,* 289 *F. Supp.* 318 (*D. Md.* 1968), which held that *Marchetti* and *Grosso* operated retroactively to remove the "probable cause" for the search warrant. But *Washington v. United States,* 402 *F. 2d* 3, 6 (4 *Cir.* 1968), goes the other way. The Fourth Circuit correctly noted that *Marchetti* expressly refrained from holding that the federal statute was invalid. *Marchetti* said (390 *U. S.* at 61, 88 *S. Ct.* at 709, 19 *L. Ed. 2d* at 905):

"* * * We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold

only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with these requirements."

We agree with the Fourth Circuit. Indeed we think the result would be the same if the federal statute were held to be unconstitutional. This follows from the values involved. The Fourth Amendment does not call for the suppression of evidence obtained in violation of its provisions. The doctrine of suppression is judge-made, a device adopted upon the belief that there was no effective remedy for a violation of its terms. Suppression is ordered, not to rectify a wrong already done, but to deter future violations. So in *Elkins v. United States,* 364 *U. S.* 206, 217, 80 *S. Ct.* 1437, 1444, 4 *L. Ed.* 2d 1669, 1677 (1960), the Court said:

"* * * The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it. See *Eleuteri v. Richman,* 26 *N. J.* 506, 513, 141 *A.* 2d 46, 50."

The purpose, then, is to deter insolence in office. To that end, the suppression of the truth is tolerated even though the price will be paid, as we have said, by the defendant's next victim. But it would be a waste of the individual's first right, his right to be protected from crime, to set the offender free when there is no trace of official arrogance. Here federal officers, obedient to their oaths of office, applied to a federal official, who, in compliance with his oath, signed arrest and search warrants, all pursuant to a statute passed by the Congress and approved by the President. In these circumstances we see no justification for the suppression of the truth. It is appropriate to repeat from *United States v. Wallace & Tiernan Co., supra,* 336 *U. S* at 800, 69 *S. Ct.* at 828, 93 *L. Ed.* at 1049, that "The Fourth Amendment, important as it is in our society, does not call for imposition of judicial sanctions where enforcing officers have followed the law with such punctilious regard as they have here." A search under war-

rants thus obtained cannot be denounced as "unreasonable," the ultimate test under the Amendment. *State v. Boykins,* 50 *N. J.* 73, 81 (1967).

The motion for leave to appeal is denied.

*For denial*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For granting*—None.