HUGO ROMANELLI AND NORMA ROMANELLI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3504–67. Filed July 2, 1970.

Max A. Reinstein, for the petitioners.
Robert H. Burgess, for the respondent.

1452

---

[2] Petitioner testified at trial:

Q. How would you characterize your conversation with the man that interviewed you?

A. Very well. He was a hundred-percent gentleman, talked very kind. He asked me a lot of questions. I answered them. I would say we got along very well.

1454

The issues in this case are whether petitioner had unreported income from wagering activities during the taxable years in question and, if so, whether his failure to report such income justified the imposition of additions to tax for fraud under section 6653(b). The disposition of these issues turns in large measure upon several evidentiary questions first presented to the Court prior to trial as a motion for the suppression of evidence. After hearing argument on the motion the Court ordered the parties to proceed with the trial and advised petitioner that he would be permitted to renew his motion at the point in trial when and if the allegedly inadmissible evidence was offered by respondent. See *Reichert* v. *Commissioner*, 214 F. 2d 19 (C.A. 7, 1954), affirming 19 T.C. 1027 (1953), certiorari denied 348 U.S. 909 (1955). Because of the importance of the evidentiary questions involved, which it appeared were of constitutional proportions, we reserved at trial our ruling on this matter for consideration in the course of the opinion on the merits. Instead, we permitted the introduction of all the evidence, subject to the later ruling in regard to its admissibility. Petitioner preserved his rights as to the admissibility of such evidence by properly objecting at trial to the admission of the evidence. We proceed at the outset to consider the overriding evidentiary issues presented by the facts herein.

The evidence, the admissibility of which is contested in this case, falls into two general categories. The first is tangible evidence, such as gambling slips, newspapers, and records—the fruit of a search of petitioner's business premises, Parkside Liquors, on October 29, 1964, pursuant to a search warrant issued the same day. The second class of evidence consists of petitioner's oral conversation with agents of the Internal Revenue Service at the time of the search. As to the former, petitioner contends that such evidence is excludable in the instant proceeding because the manner of its acquisition violated petitioner's fourth and fifth amendment rights. As to the latter, petitioner asserts that the inadmissibility of such evidence is compelled by *Miranda* v.

*Arizona*, 384 U.S. 436 (1966), for failure of the Government agents who questioned petitioner to apprise him of his constitutional rights under the fifth and sixth amendments. We have concluded after thorough consideration of these issues that both classes of evidence are admissible in the instant case.[4] We consider first the admissibility of tangible evidence seized in the course of the raid.

Petitioner's contention respecting the alleged illegality of the search is two-pronged. He urges first that the warrant was technically defective in that the description of the place to be searched lacked the particularity necessary to the validity of a search warrant. Specifically, petitioner focuses upon the number address of petitioner's business premises which was erroneously stated to be 5152 rather than 5158 West Irving Park Road.

The search warrant in question described the object of the search as "the ground floor of a one-story brick building at 5152 West Irving Park Road, Chicago, Illinois, commonly known as Parkside Liquors." While we recognize that the number address of the premises to be searched might oftentimes be critical to its proper identification, an unquestionable requisite to the validity of the warrant (see *United States* v. *Wroblewski*, 105 F. 2d 444 (C.A. 7, 1939)), we think the description of petitioner's business premises in the circumstances of this case adequately satisfied the particularity requirement to which petitioner alludes. Parkside Liquors, together with two other stores, occupied a single structure located at the intersection of Laramie Avenue and West Irving Park Road. Of the three stores, only petitioner's business premises sold liquor. A conspicuous sign at or near the entrance of petitioner's premises identified such premises as Parkside Liquors. In addition, petitioner's premises were known and commonly referred to in the community as Parkside Liquors. The warrant focuses the location of Parkside Liquors upon the 5100 block and upon the 5152 through 5158 building of West Irving Park Road. There could have been no mistaking petitioner's tavern as the proper object of the search. Moreover, the limits of the search were carefully circumscribed as the "ground floor of a one-story building" which we do not view as an overbroad search. In these circumstances we deem the irregularity noted by petitioner insufficient to vitiate the search warrant. The number address, albeit an important means of identification, is not, per se, a condition to the validity of the warrant.

---

[4] While the oral admissions of petitioner appear to adequately establish the deficiency and fraudulent intent of petitioner, we consider also the admissibility of the tangible evidence because of the possible contention that the admissions were "poisoned" by the alleged illegal search and seizure. See *Costello* v. *United States*, 365 U.S. 265, 278–280 (1961) ; *Takahashi* v. *United States*, 143 F. 2d 118, 122 (C.A. 9, 1944), citing *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 391 (1920).

In *Keiningham* v. *United States*, 287 F. 2d 126 (C.A.D.C. 1960), relied upon by petitioner, the search warrant described the premises to be searched only as 1106 18th Street, NW. The officers executing the warrant, however, entered 1108 18th Street, NW., through a partition on the porch of the 1106 premises and seized certain evidence. The court held the seizure invalid since the officers had illegitimately extended the scope of the search warrant. The instant case is readily distinguishable since the search herein was limited to the place particularly described in the search warrant. Similarly, other cases cited by petitioner are factually distinguishable and require no further comment.

Petitioner next attacks the validity of the search warrant on the ground that its issuance was founded upon an unconstitutional law. The underlying basis for its issuance was, as therein stated, sections 4412 and 4905.[5] The former imposes a registration requirement upon persons who wish to engage in the business of accepting wagers. The latter, except insofar as it refers to section 4412, is not germane and adds little to the issue under consideration. Petitioner argues that these provisions can, in view of *Marchetti* v. *United States*, 390 U.S. 39 (1968), no longer support the issuance of a search warrant.

The *Marchetti* case involved the constitutionality of a criminal conviction for violation of Federal wagering statutes. *Marchetti* dealt specifically with sections 4411 and 4412. Section 4411 requires the payment by gamblers of an annual occupation tax; section 4412, as indicated above, requires the registration with appropriate officials

---

[5] SEC. 4412. REGISTRATION.

(a) REQUIREMENT.—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—

(1) his name and place of residence;

(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and

(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person.

SEC. 4905. LIABILITY IN CASE OF DEATH OR CHANGE OF LOCATION.

(a) REQUIREMENTS.—When any person who has paid the special tax for any trade or business dies, his wife or child, or executors or administrators or other legal representatives, may occupy the house or premises, and in like manner carry on, for the residue of the term for which the tax is paid, the same trade or business as the deceased before carried on, in the same house and upon the same premises, without the payment of any additional tax. When any person removes from the house or premises for which any trade or business was taxed to any other place, he may carry on the trade or business specified in the register kept in the office of the official in charge of the internal revenue district at the place to which he removes, without the payment of any additional tax; *Provided,* That all cases of death, change, or removal, as aforesaid, with the name of the successor to any person deceased, or of the person making such change or removal, shall be registered with the Secretary or his delegate, under regulations to be prescribed by the Secretary or his delegate.

(b) REGISTRATION.—

(1) For registration in case of wagering, playing cards, narcotics, marihuana, and white phosphorous matches, see sections 4412, 4455, 4722, 4753, and 4804(d), respectively.

(2) For other provisions relating to registration, see subtitle F.

before engaging in the business of accepting wagers. The defendant in *Marchetti* was convicted in the lower courts for violation of these statutes. Certiorari was granted "to re-examine the constitutionality under the Fifth Amendment of the pertinent provisions of the wagering tax statutes." The Supreme Court reversed the conviction, declaring: "[Section 4411 and 4412] may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination."

In so holding, the Court overruled *United States* v. *Kahriger*, 345 U.S. 22 (1953), and *Lewis* v. *United States*, 348 U.S. 419 (1955), two prior Supreme Court cases which had upheld the constitutionality of the wagering tax statutes. The Court in *Marchetti* v. *United States*, *supra* at 48, reasoned that the registration requirement of section 4412 required the defendant to furnish information "which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt." The Court permitted the assertion of the privilege against self-incrimination in defense of a prosecution under section 4412.

*Marchetti*, however, stops short of expressly declaring the wagering statutes unconstitutional. The carefully circumscribed holding of the Court is:

under the wagering tax system as presently written * * * petitioner properly asserted the privilege against self-incrimination, and * * * his assertion should have provided a complete defense to this prosecution. * * * We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes. [390 U.S. at 60]

Petitioner and respondent disagree as to the precise holding of *Marchetti* in the context of the instant case. Petitioner takes the position that the statutes involved in that case are no longer constitutionally enforceable; hence, a search warrant founded upon such section is void and the search illegal. Respondent, on the other hand, argues that *Marchetti* merely forecloses the possibility of criminal conviction in the face of a timely assertion of the fifth amendment. Respondent points out, however, and correctly so, that failure to assert the privilege, or an effective waiver thereof, will leave the defendant vulnerable to criminal prosecution and conviction. See *Marchetti* v. *United States*, *supra* at 50; *Grosso* v. *United States*, 390 U.S. 62, 70 (1968). It is also noteworthy that the fifth-amendment privilege merely pro-

vides a defense to prosecution for failure to comply with the gambling statutes; it does not extinguish one's liability for the prescribed taxes. *Grosso* v. *United States, supra* at 69 fn. 7.

The question to be decided, then, is whether the search warrant at issue, issued in 1964 and founded upon section 4412 of the Internal Revenue Code, was defective and the attendant search illegal as a result of the promulgation of *Marchetti* in 1968. For the reasons which follow, we have concluded that the *Marchetti* case does not affect the validity of this search warrant which was issued prior to the promulgation of *Marchetti*.

We preface our consideration of this issue with a brief discussion of the fourth amendment, its background and purpose.

The fourth amendment [6] embodies those protections which "affect the very essence of constitutional liberty and security. * * * they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life." *Boyd* v. *United States*, 116 U.S. 616, 630 (1886). This amendment is no longer thought to protect the individual against criminal investigation alone. "The basic purpose of [the fourth amendment] * * * is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* v. *Municipal Court*, 387 U.S. 523, 528 (1967). While the Supreme Court has consistently and zealously resisted any attempted erosion of the protections afforded by the fourth amendment, it has nevertheless also recognized that such rights are not absolute and must yield under limited and carefully controlled circumstances to various public interests of overriding importance. Thus, *"unreasonable"* searches alone are within the protection of the fourth amendment. The term "unreasonable" has been broadly construed to require, with few exceptions,[7] the procurement of a search warrant:

one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. [387 U.S. at 528, 529]

This requirement—that a search and seizure be authorized by the issuance of a warrant—serves to interpose the neutral and detached authority of a magistrate between the police and the public. *Berger* v. *New York*, 388 U.S. 41 (1967). "When the right of privacy must rea-

---

[6] "AMENDMENT [IV]— * * *

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[7] The most notable exception is a search incident to a lawful arrest, where a limited search may be conducted without the advance issuance of a warrant.

sonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." *Johnson* v. *United States*, 333 U.S. 10, 14 (1948).

But the issuance of a search warrant is itself subject to constitutional limitations. Such issuance must, under the fourth amendment, be founded upon the existence of "probable cause." Because the area of public concern which has historically warranted the invasion of the constitutionally protected right to privacy is the enforcement of the law, the term "probable cause" has been traditionally taken to mean the reasonable belief that the search is required in order to detect criminal conduct. "The purpose of the probable-cause requirement of the Fourth Amendment, [is] to keep the state out of constitutionally protected areas until it has reason to believe that a specific crime has been * * * committed." *Berger* v. *New York, supra* at 59. However, probable cause includes all governmental interests which allegedly justify official intrusion upon the constitutionally protected interests of the private citizen.[8] *Camara* v. *Municipal Court, supra* at 534, 535.

Against the foregoing constitutional background, we proceed to consider the validity of the search warrant in the instant case. Petitioner has contended that the *Marchetti* case removes the probable cause for the issuance of the warrant in 1964. Petitioner's argument is predicated on the dual premises that *Marchetti* has invalidated the wagering statutes by rendering them unenforceable and that such invalidation operates *retroactively* to vitiate the probable cause for the issuance of the warrant. The first of these premises has been firmly rejected by the Fourth Circuit in *Washington* v. *United States*, 402 F. 2d 3 (C.A. 4, 1968). This case involved a civil proceeding to enforce a tax lien for delinquent wagering excise taxes. The court, after deciding that the taxpayer's liability for the payment of wagering excise taxes was not extinguished by assertion of the fifth amendment, turned to the evidentiary question. As in the instant case, the taxpayer in *Washington* questioned pursuant to *Marchetti* the validity of a search warrant founded upon the violation of the Federal wagering tax statutes. The court, rejecting this claim, stated:

We find no support in those cases for appellants' contention. The Supreme Court did not invalidate the wagering tax statutes; it did not abolish the criminal offenses therein specified; it did not say that an indictment or an information would not lie. The carefully circumscribed holding is that a defendant may not be *convicted* of a criminal violation of the wagering tax laws *if* he has properly claimed his constitutional privilege against self-incrimination. Under the circumstances, we conclude that where, as here, there exists probable cause for

---

[8] *Camara* v. *Municipal Court*, 387 U.S. 523 (1967), concerned administrative inspection programs which are justified by the overriding interest of public health and safety. The "governmental interests" which have thus far been recognized as bases for the conduct of a search are the enforcement of criminal law and public health and safety.

belief that an offense has been committed (which appellants conceded) a valid search warrant may issue even though the Government may be unable to convict the defendant if he properly raises his claim of privilege against self-incrimination.[2] We hold that the judgment for wagering excise tax deficiencies rests upon a valid assessment and will be affirmed. [Footnote omitted.[5]]

Accord, *State* v. *Gerardo*, 53 N.J. 261, 250 A. 2d 130 (1969) ; *Hamilton* v. *United States*, an unreported case (S.D. N.Y. 1969, 24 A.F.T.R. 2d 69–6009, 69–2 U.S.T.C. par. 15,924). Contra, *Silbert* v. *United States*, 289 F. Supp. 318, 320 (D. Md. 1968).

The foregoing rationale of *Washington* v. *United States, supra,* in holding valid a search warrant issued pursuant to the wagering tax statutes, is equally applicable to search warrants issued *before* and *after* the *Marchetti* decision. However, under the facts of the instant case, we need not pass upon the validity of a search warrant procured after the promulgation of *Marchetti.* Whatever the result may be for post-*Marchetti* search warrants, we think it quite clear that a pre-*Marchetti* search warrant based upon the gambling tax statutes is valid and evidence so obtained is admissible. We follow the holding of *Washington* to this extent.

The search warrant in the instant case was issued in 1964, several years before the decision in *Marchetti.* As noted above, the Supreme Court in deciding *Marchetti,* overruled the *Kahriger* and *Lewis* cases, two prior Supreme Court cases which had upheld the constitutionality of the wagering tax statutes and specifically rejected the proposition later adopted in *Marchetti* that the statutes as presently structured contravened the fifth amendment. The search warrant was thus issued upon the reasonable belief that criminal statutes, properly enacted by Congress and upheld by the Supreme Court, were being violated. The decision to conduct the search was not that of police officers, but of an impartial magistrate, faithfully executing the duties of his office. In these circumstances, petitioner's premise that *Marchetti* served to retroactively remove probable cause from the issuance of the warrant is wholly unpersuasive. Were the interests safeguarded by the fourth amendment absolute and inviolate, petitioner's contention may have been compelling. But, as we have already stated, such right to privacy, though basic to a free society, may be overborne by principles equally basic. As the Supreme Court has stated in *Brinegar* v. *United States,*

---

[9] Interestingly enough, the taxpayer in *Washington* v. *United States*, 402 F. 2d 3 (C.A. 4, 1968), had, in a prior criminal proceeding, failed to raise the privilege against self-incrimination and was sentenced to imprisonment. *Washington* v. *United States, supra* at fn. 9. See also in this connection *United States* v. *Donovan,* an unreported case (E.D. Va. 1969, 24 A.F.T.R. 2d 69–6191, 69–2 U.S.T.C. par. 15,915), holding *Marchetti* inapplicable to a pre-*Marchetti* plea of guilty leading to conviction under the wagering tax statutes.

338 U.S. 160, 175–176 (1949), in commenting upon the probable-cause requirement for warrantless searches:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. * * *
>
> "The substance of all the definitions" of probable cause "*is a reasonable ground for belief of guilt.*" * * * And this "means less than evidence which would justify condemnation" or conviction, * * *
>
> These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a *practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.* Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.
>
> [Emphasis added.]

Validity of the search warrant similarly does not hinge upon the ultimate truth of its allegations, but upon the reasonable ground for belief of guilt. We deem this principle applicable, with equal force, to the legal classification of the conduct as criminal. Where the warrant, judged according to the contemporary legal standards, conformed meticulously with the fourth-amendment requirements, the logic of petitioner's premise disappears. See *United States* v. *Beyer*, 426 F. 2d 773 (C.A. 2, 1970). All that the constitution requires is that the search be reasonable, which is after all the "ultimate standard" of its validity. *Eaton* v. *Price*, 364 U.S. 263, 273 (1960). The search having been in our view reasonable, we can see no reason to exclude the evidence procured in its execution from the instant proceeding.[10]

Moreover, we perceive a further fallacy in petitioner's reasoning indicated by his retroactive application of *Marchetti*. The Supreme Court has passed upon the retroactivity of the various judicial innovations. See *Johnson* v. *New Jersey*, 384 U.S. 719 (1966); *Stovall* v. *Denno*, 388 U.S. 293 (1967); *Tehan* v. *Shott*, 382 U.S. 406 (1966); and *Linkletter* v. *Walker*, 381 U.S. 618 (1965). The retroactive effect of Marchetti remains undecided to date.[11] Under the cases cited above, retroactivity of various Supreme Court decisions ranges from application of the new law to cases in which the offending conduct occurred after the decision was filed, to application of the new law to only those

---

[10] For similar reasoning, see *Silbert* v. *United States,* 282 F. Supp. 635, 645–646 (D. Md. 1968); *State* v. *Gerardo,* 53 N.J. 261, 250 A. 2d 130 (1969); and *Hamilton* v. *United States,* an unreported case (S.D. N.Y. 1969, 24 A.F.T.R. 2d 69–6009, 6013, 69–2 U.S.T.C. par. 15,924).

[11] For lower court cases dealing with the retroactivity of *Marchetti,* see fn. 12 *infra.*

convictions which have not become final on the date of the decision.[12] It appears that under the most liberal of the retroactivity rules, the search warrant issued on October 29, 1964, could have led to conviction under the wagering tax statutes which would have survived the later *Marchetti* decision. Thus, for example, a conviction which was final prior to January 29, 1968, the date of the promulgation of *Marchetti*, would have been beyond the reach of *Marchetti*, under the retroactivity principles expressed in *Linkletter* v. *Walker*, *supra*. It seems hardly reasonable to retrospectively invalidate a search warrant on the ground that *Marchetti* declared unconstitutional the statutes upon which it was based, where a criminal prosecution predicated upon the same statutes, would have escaped the reach of *Marchetti*. We therefore reject petitioner's retroactive application of *Marchetti* to remove probable cause for the issuance of the warrant.[13]

We next consider the admissibility of statements made by petitioner to Special Agent Saranow during the course of the search. Petitioner objects to their admissibility on the ground that exclusion of such evidence is compelled by *Miranda* v. *Arizona*, *supra*, because of his failure to receive the required warnings.

We have recently considered the application of *Miranda* to interrogations by representatives of the Internal Revenue Service. *John Harper*, 54 T.C. 1121 (1970). In *Harper* we concluded that failure of the revenue agent to advise a taxpayer of his constitutional rights under the fifth [14] and sixth amendments does not warrant the exclusion

---

[12] *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), and *Miranda* v. *Arizona*, 384 U.S. 436 (1966), were applied to cases in which trial commenced after the promulgation of those cases by the Supreme Court under *Johnson* v. *New Jersey*, 384 U.S. 719 (1966) ; *Gilbert* v. *California*, 388 U.S. 263 (1967), and *United States* v. *Wade*, 388 U.S. 218 (1967), were essentially held to be prospective only under *Stovall* v. *Denno*, 388 U.S. 293 (1967) ; and *Griffin* v. *California*, 380 U.S. 609 (1965), and *Mapp* v. *Ohio*, 367 U.S. 643 (1961), were made applicable under *Linkletter* v. *Walker*, 381 U.S. 618 (1965), and *Tehan* v. *Shott*, 382 U.S. 406 (1966), to cases in which convictions were not final on the dates the *Griffin* and *Mapp* cases were filed. See also *Desist* v. *United States*, 394 U.S. 244 (1969), giving *Katz* v. *United States*, 389 U.S. 347 (1967), prospective application only.

As to the retroactivity of *Marchetti*, see *Mackey* v. *United States*, 411 F. 2d 504 (C.A. 7, 1969), and *Graham* v. *United States*, 407 F. 2d 1313 (C.A. 6, 1969). In *Mackey* the court held the defendant's wagering tax return, filed prior to *Marchetti*, admissible in the criminal prosecution for tax evasion on the ground that *Marchetti* was not retroactive in this situation. See also *Silbert* v. *United States*, *supra* at 643–644 ; and *United States* v. *Donovan*, *supra*.

[13] Respondent has further contended that the evidence in question, whether or not obtained in violation of the fourth amendment, is admissible in the instant *civil* proceeding. In view of our conclusion as to the validity of the search warrant, however, we do not reach this contention of respondent.

[14] "AMENDMENT [V]—* * *

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land and naval forces, or in the Militia, when in actual service in time of War or public danger ; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ; *nor shall be compelled in any criminal case to be a witness against himself*, nor be deprived of life, liberty, or property, without due process of law ; nor shall private property be taken for public use, without just compensation." (Emphasis added.)

from evidence of statements made by the taxpayer to revenue agents at a noncustodial and noncoercive interview. The Court in *Harper* rested its decision upon the dual alternative premises that *Miranda* is inapplicable to noncustodial interrogation, and that, in any event, admissions given without the *Miranda* warnings, whether or not admissible in a criminal prosecution, are admissible in a civil proceeding.[15] The Court recognized, however, citing *Mathis* v. *United States*, 391 U.S. 1 (1968), that custodial interrogations, whether by revenue or special agents, are within the mandate of *Miranda*. *John Harper*, *supra* at 1133 fn. 5.

Petitioner argues in the instant proceeding that the interrogation should properly be characterized as custodial. We can hardly assume under the circumstances of this case, as we did in *Harper*, that the questioning was, in fact, noncustodial. The term "custodial interrogation" as defined in *Miranda* refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." The Supreme Court in *Orozco* v. *Texas*, 394 U.S. 324 (1969), applied the *Miranda* principles to an interrogation not wholly unlike the circumstances of the instant case. In that case, four officers entered defendant's bedroom, in a boarding house at which he lodged, and briefly questioned him. The Supreme Court held the questioning to be of the type comprehended by *Miranda* and excluded the admissions made by the defendant without having been apprised of his constitutional rights. We observe no ready factual distinction between *Orozco* and the instant case so far as the manner of questioning is concerned. However, we need not decide whether the questioning was custodial, since the second rationale for the inclusion of the statements in *Harper* governs the issue in the instant case. For reasons adequately stated in *Harper*, *supra* at 1137–1139, we think that *Miranda* does not preclude the admissibility of statements made by petitioner in a civil proceeding. Petitioner has cited no case, and we have found none, requiring admissions obtained without informing petitioner of his constitutional rights to be excluded

---

[15] In *John Harper*, 54 T.C. 1121 (1970), this Court declined to follow the guidelines regarding the administration of the *Miranda* warnings set forth in *United States* v. *Dickerson*, 413 F. 2d 1111 (C.A. 7, 1969), which extended the applicability of *Miranda* principles to noncustodial interrogations. See also *United States* v. *Habig*, 413 F. 2d 1108 (C.A. 7, 1969), and *United States* v. *Lackey*, 413 F. 2d 655 (C.A. 7, 1969). Cf. *Steiner* v. *Commissioner*, 350 F. 2d 217 (C.A. 7, 1965), affirming a Memorandum Opinion of this Court. Under *United States* v. *Dickerson*, *supra* at 1117, *Miranda* warnings are required to be given by revenue agents "at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division [of the Internal Revenue Service]." The Seventh Circuit, to which appeal of the instant case lies, expressly assigned to *Dickerson* prospective application. Thus, the instant proceeding, the events of which occurred in 1964, prior to *Dickerson*, is not governed by that case. Moreover, *Dickerson* involved a criminal prosecution whereas the conclusion of the instant case is predicated upon the civil nature of the instant proceeding.

from a civil proceeding. To be sure, the fifth amendment timely asserted may excuse a witness from testifying in a civil proceeding. *McCarthy* v. *Arndstein*, 266 U.S. 34 (1924); *In Re Gault*, 387 U.S. 1 (1967). But such assertion, as we stated in *Harper*, hinges upon the possible use of the evidence in a criminal proceeding. *McCarthy* v. *Arndstein, supra;* and *In Re Gault, supra.* Where no threat of criminal prosecution exists because of a grant of immunity or other reason, the fifth amendment is inapplicable and testimony may be compelled. *Brown* v. *Walker*, 161 U.S. 591 (1896); *Brown* v. *United States*, 359 U.S. 41 (1959); *Mason* v. *United States*, 244 U.S. 362 (1917). Similarly a statute or judicial order barring evidence from being utilized in a criminal prosecution will, if coextensive with the privilege against self-incrimination, justify the compulsory disclosure of evidence otherwise within the protection of the fifth amendment. *Simmons* v. *United States*, 390 U.S. 377 (1968); *Murphy* v. *Waterfront Comm'n.*, 378 U.S. 52 (1964); and *Counselman* v. *Hitchcock*, 142 U.S. 547 (1892). In the instant case, petitioner's privilege against self-incrimination may be adequately safeguarded by an appropriate exclusionary order in any criminal proceeding which may follow.[16] *Sanford* v. *United States*, 358 F.2d 685 (C.A. 5, 1966); *Venn* v. *United States*, 400 F.2d 207, 211 fn. 7 (C.A. 5, 1968); *John Harper, supra.* We thus consider the oral admissions of petitioner admissible in the instant proceeding.

The above-stated rationale for the inclusion of the oral admissions of petitioner is, of course, predicated upon the now well-established principle that the additions to tax under section 6653(a) or (b) do not fall within the rubric of criminal or quasi-criminal proceedings. *Helvering* v. *Mitchell*, 303 U.S. 391 (1938); *John Harper, supra* at 1138. In *Mitchell* the taxpayer questioned the constitutionality of the imposition by the Commissioner of Internal Revenue of a 50-percent addition to tax under section 6653(b) following his acquittal from an indictment charging him with the willful attempt to evade and defeat the payment of tax (presently section 7201). The taxpayer claimed that the fifth amendment provisions with respect to double jeopardy barred the assessment of "penalties" after acquittal under the criminal statutes. Mr. Justice Brandeis, speaking for a nearly unanimous Court, held that the additions to tax are not "intended as punishment so that the proceeding is essentially criminal"; such additions were rather, as in the case of the additions to tax of 25 percent

---

[16] The exclusionary rule with respect to compelled testimony encompasses the "fruit" of the testimony as well as the compelled testimony itself. *Murphy* v. *Waterfront Comm'n,* 378 U.S. 52, 79 (1964); *Arndstein* v. *McCarthy,* 254 U.S. 71 (1920). The Government bears the burden of proving in any subsequent criminal proceeding the absence of "taint" respecting evidence it seeks to offer by establishing an independent source of such evidence. *Murphy* v. *Waterfront Comm'n, supra* at 79 fn. 18.

for delinquency and 5 percent for negligence, of a "remedial character." The Court noted that civil procedures, applicable to the civil "fraud" proceeding, are incompatible with constitutional guarantees governing the criminal prosecutions—such as the rights to trial by jury, to be confronted with witnesses, and "to refuse to testify." The Court thus refused to apply the fifth amendment provisions regarding double jeopardy to the imposition of additions to tax under section 6653(b).

Having disposed of the threshold evidentiary issues, we turn to the substantive issue of this case, viz, whether the Commissioner properly asserted deficiencies and additions to tax under section 6653(b) for the taxable years 1961 through 1964. We think the evidence introduced at trial, including the testimony of several undercover agents regarding petitioner's wagering activities in 1964; the tangible evidence secured in the October 29, 1964, search of petitioner's business premises, Parkside Liquors; and oral admissions of petitioner at the time of the search, clearly and convincingly support the Commissioner's assertion of both the deficiencies and additions for fraud. Indeed, petitioner has neither denied nor defended his failure to report substantial amounts of wagering income during the years at issue; but was content with his challenge to the admissibility of various items of evidence discussed earlier. We think it abundantly clear from the record before us that petitioner has knowingly and fraudulently understated his income for the purpose of evading the payment of income taxes.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

DAWSON, *J.*, concurring: I am in full accord with the majority opinion in this case. As Judge Fay correctly points out, one of the alternative holdings in *John Harper*, 54 T.C. 1121 (1970), was that the self-incrimination clause of the fifth amendment has no application in a civil case where subsequent criminal prosecution is no threat. *Harper* cannot be dismissed as simply a noncustodial case.

Nothing said in the *Harper* opinion or in the majority opinion in this case would seem to foreclose the point made forcefully by Judge Tannenwald that the due process clause of the fifth amendment may protect a civil litigant from fundamental unfairness. However, as our opinion in *Harper* makes clear, the procedural rigidities of *Miranda* are ill-suited to civil tax cases and to ordinarily noncoercive tax investigations. I doubt, therefore, the wisdom of trying to accomplish with the due process clause what we rejected under the self-incrim-

ination clause in *Harper*. Moreover, I would reserve judgment on this due process issue until such time as a taxpayer places it squarely before us.

RAUM, FORRESTER, and IRWIN, *JJ.*, agree with this concurring opinion.

---

TANNENWALD, *J.*, concurring: I fully agree with the majority insofar as the search warrant issue is concerned. I also concur in the result with respect to the issue involving the necessity of *Miranda* warnings, on the same basis as in my concurrence in *John Harper*, 54 T.C. 1121 (1970), namely, that such warnings are not required in noncustodial situations.

In my opinion, the facts herein do not establish that petitioner was in custody at the time of the interrogation. The door had only a spring lock so that petitioner could, if he chose, walk out of the room at any time, and, as the Findings of Fact show, the interrogation was "cordial and friendly." Under these circumstances, I do not think that the interrogation achieved that level of pressure which was the foundation of the *Escobedo* and *Miranda* decisions. To be sure, the findings of fact also show the petitioner was "understandably nervous," but the objective aspects of the situation, rather than the subjective attitude of the taxpayer, are the focal point for determining whether the interrogee is in custody. See *Miranda* v. *Arizona*, 384 U.S. 436, 468–470 (1966).

The need for *Escobedo* and *Miranda* warnings, in order to be able to use the fruits of custodial interrogations in civil tax litigation, presents serious questions involving both the constitutional rights of the individual and the integrity of the judicial process. The sixth amendment limits the requirement of assistance of counsel to criminal cases and the fifth amendment similarly limits the privilege against self-incrimination. But the fifth amendment also specifies, "nor shall any person * * * be deprived of life, liberty, or property, without due process of law." I do not read *Escobedo* and *Miranda* as confining the rationale for decision to the specific requirements of those amendments as to the need for warnings concerning the privilege against self-incrimination and the right to counsel. Indeed, prior to those landmark decisions, it was the due process clause which provided the foundation for deciding whether an individual's constitutional rights, in situations such as those involved herein, were violated. See Mr. Justice Clark concurring and Mr. Justice Harlan dissenting in *Miranda* v. *Arizona*, 384 U.S. at 503, 505–509. Moreover, as Mr. Justice Clark, writing for the majority in *Mapp* v. *Ohio*, 367 U.S. 643 (1961), pointed out, the integrity of the judicial process is also at stake in determining whether illegally obtained evidence should be admitted.

See 367 U.S. at 659, 660; see also *Elkins* v. *United States*, 364 U.S. 206, 222 (1960). This is an important element in civil proceedings as well as criminal proceedings.

I do not think that it is sufficient to confine the prohibition of the use of the fruits of custodial situations to instances where the interrogee's physical safety is threatened (i.e., a gun to his head)— circumstances which would permit a finding of such duress that a court could conclude that the responses were not in law those of the interrogee.

Our democratic institutions, including our judicial system, can survive the present onslaught upon them only if they are tempered with qualities of respect and understanding for the rights of the individual. This does not mean that we should confer an open-ended license for each person to do as he wants and to ignore his obligations to his fellow citizens, including the payment of taxes. Similarly, it does not mean that the Government, in the name of law and order, should be able to discharge its responsibilities to enforce its civil claims for taxes free of the procedural requirements of due process.

Mr. Justice Clark framed the problem very clearly when he stated in *Mapp* v. *Ohio, supra:*

Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in Olmstead v. United States, * * * 277 U.S. 438, 485 * * * (1928) : "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. * * * If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." [See 367 U.S. at 659.]

We ought to exercise extreme care in putting our stamp of approval on the use of the fruits of "incentive detention," particularly where, as was the case herein, the interrogation encompassed the prospect of criminal as well as civil proceedings on the part of the State. To permit the State, under such circumstances, to pick and choose between the remedies it will pursue will surely invite contempt for the processes of Government with anarchy as the potential and bitter result.

I think that the due process clause of the fifth amendment should apply to custodial interrogations in connection with civil claims by the State.[1] To the extent that the majority opinions herein and in *John Harper, supra*, imply otherwise, I disagree.

FORRESTER and STERRETT, *JJ.*, agree with this concurring opinion.

---

[1] Several cases have applied the fourth amendment to the use of illegally obtained evidence in a civil proceeding. See *Pizzarello* v. *United States*, 408 F. 2d 579 (C.A. 2, 1969) ; *Berkowitz* v. *United States*, 340 F. 2d 168 (C.A. 1, 1965) ; *Tovar* v. *Jarecki*, 173 F. 2d 449 (C.A. 7, 1949) ; *Rogers* v. *United States*, 97 F. 2d 691 (C.A. 1, 1938) ; *State of Iowa* v. *Union Asphalt & Roadoils, Inc.*, 281 F. Supp. 391 (S.D. Iowa 1968) ; *United States* v. *Blank*, 261 F. Supp. 180 (N.D. Ohio 1966) ; *Lord* v. *Kelley*, 223 F. Supp. 684 (D. Mass. 1963) ; *Lasoff* v. *Gray*, 207 F. Supp. 843 (W.D. Ky. 1962).

QUEALY, J., dissenting: The majority opinion holds that evidence obtained by the Government in a criminal proceeding, in violation of the constitutional rights of the individual, may nevertheless be admissible in a civil tax proceeding before this Court in which the Government and the individual are the parties. With this, I cannot agree.

It is not a question of the degree of compulsion to which the taxpayer may have been subjected by the Government's agents. Under the decision of the majority, the taxpayer in this case could have been locked in the freezer until he admitted that he owed taxes to the Government, and his admission used in evidence against him before this Court.

When viewed in this light, the conclusion is inescapable that in order to protect the constitutional rights of the individual, such evidence must be excluded in any proceeding between the Government and the individual, whether of a criminal nature, a quasi-criminal nature, or strictly a civil tax assessment. To hold otherwise would be to say that the rights of the individual may be freely violated by the Government in obtaining its evidence for the assessment and collection of taxes, so long as no criminal action is instituted. It was precisely such activity on the part of Government the Constitution was intended to guard against.

In my opinion, evidence obtained in violation of a taxpayer's constitutional rights in connection with a criminal investigation—and the warrant in question was issued upon a finding of probable cause that a crime had been committed—is inadmissible in any proceeding between the Government and the individual whose rights have been violated. *Pizzarello* v. *United States*, 408 F. 2d 579 (C.A. 2, 1969). I would distinguish *John Harper*, 54 T.C. 1121 (1970). In that case, not only was there no coercion, but no action had been taken to initiate a criminal investigation. The statements in question arose in the course of a routine examination of the taxpayer's returns.